[S.F. No. 23079. In Bank. Jan. 22, 1975.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF MARIN COUNTY, Respondent;
MARK KEITHLEY, Real Party in Interest.

COUNSEL

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, W. Eric Collins and Robert R. Granucci, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Harold J. Truett, Public Defender, Peter J. Muzio, Deputy Public Defender, and David W. Rudy for Real Party in Interest.

John F. Bowman, Charles C. Marson, Joseph Remcho, Peter E. Sheehan, Deborah Hinkel and Toby Sherwood as Amici Curiae on behalf of Real Party in Interest.

OPINION

**CLARK, J.**—The People seek review by writ of mandate (Pen. Code, § 1538.5, subd. (o)) of respondent superior court's order suppressing evidence in a burglary prosecution (Pen. Code, § 459). The evidence (a stove) was seized during a search of defendant's residence conducted pursuant to his purported consent. Respondent court impliedly found that defendant's consent was the fruit of a poisonous tree—an unlawful interrogation. The sole question presented by this appeal is whether this implied finding is supported by substantial evidence. The writ is denied.

Defendant was arrested for burglary of an electrical contractor's office when his fingerprint was identified on a flashlight found there. He was transported to the police station and taken upstairs for an interview with Inspector Sisk, routinely conducted "[t]o find out as much about the case as I can."[1] Advised of his *Miranda*[2] rights, defendant replied he did not wish to discuss the case.

Nevertheless, Sisk prolonged the conversation, informing defendant his fingerprint had been found at the office. Defendant asked, "The

[1]Sisk was the sole witness at the suppression hearing.
[2]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

flashlight?" Sisk replied, "Yes, the flashlight, your fingerprint was found on the flashlight."

Sisk also told defendant the district attorney's office had advised him that a search warrant could be obtained for defendant's residence. In defendant's presence, Sisk then attempted to telephone a deputy district attorney to secure a warrant, but was unable to reach him.

Sisk next showed defendant photographs of a pharmacy, commenting he thought defendant might be responsible for burglarizing it too. Learning defendant was in possession of the exact amount of currency taken the previous evening in a third burglary, Sisk said he felt defendant might be guilty of that crime as well. Finally, during that interview or later (he could not recall which), Sisk said he thought a second person might be involved in the burglary of the contractor's office, and asked defendant's help in apprehending him.

After interviewing defendant for approximately 30 minutes, Sisk took him downstairs to be photographed and fingerprinted. At defendant's request, both Sisk and defendant tried to telephone his probation officer several times, but were unable to reach him. Sisk subsequently left the station to respond to a burglary alarm. During his brief absence, defendant sat with Lieutenant Dyke. Sisk testified he did not know whether Dyke interrogated defendant while he was gone; Dyke did not testify.

When Sisk returned defendant asked him what would happen next. Sisk replied that defendant's residence would be searched after a warrant was obtained. Defendant said he would make things easier for the officer by telling him where to find the stove. He added that he did not want his brother's and sister's property disturbed. After being partially readvised of his *Miranda* rights,[3] defendant confessed to taking the stove from the contractor's office.

After several more unsuccessful attempts to reach his probation officer, defendant drove with Sisk to his residence where he directed the officer to a stove located in his sister's bedroom. Later, while waiting to

---

[3]"I advised him that anything that he said could be used against him. I also asked him if he wished to talk to me without benefit of attorney, . . . keeping in mind the other rights. [¶] Q. What was his response to this? [¶] A. That he would talk to me only regarding the . . . search warrant, getting the property from his house and the other person involved."

be admitted to the county jail, defendant was asked if he was responsible for any other burglaries. Sisk explained he simply wanted to "clear the records" and would not charge defendant with the other offenses. Defendant admitted one other burglary. He was booked into the county jail approximately three hours after his arrest.

"If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." (*Miranda* v. *Arizona* (1966) 384 U.S. 436, 473-474 [16 L.Ed.2d 694, 723, 86 S.Ct. 1602, 10 A.L.R.3d 974].) Continuation of the interrogation here after defendant said he did not wish to discuss the case clearly violated his rights under *Miranda,* and the People do not contend otherwise. However, the People argue defendant's consent to the search of his residence was not tainted by the *Miranda* violation.

"That degree of 'attenuation' which suffices to remove the taint from evidence obtained directly as a result of unlawful police conduct requires at least an intervening independent act by the defendant or a third party which breaks the causal chain linking the illegality and evidence in such a way that the evidence is not in fact obtained 'by exploitation of that illegality.' Consent by the defendant, if 'sufficiently an act of free will to purge the primary taint of the unlawful [arrest]' (*Wong Sun* v. *United States* [(1963) 371 U.S. 471, 486 (9 L.Ed.2d 441, 454, 83 S.Ct. 407)]), may produce the requisite degree of 'attenuation.' " (*People* v. *Sesslin* (1968) 68 Cal.2d 418, 428 [67 Cal.Rptr. 409, 439 P.2d 321].) By suppressing the evidence, the trial court impliedly found defendant's consent was not sufficiently an act of free will to purge the taint of the unlawful interrogation.

A proceeding under section 1538.5 to suppress evidence is a full hearing on the issues before the superior court sitting as finder of fact. (*People* v. *Superior Court (Peck)* 10 Cal.3d 645, 649 [111 Cal.Rptr. 565, 517 P.2d 829]; *People* v. *West* (1970) 3 Cal.3d 595, 602 [91 Cal.Rptr. 385, 477 P.2d 409].) The power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor proper exercise of that power, and the trial court's findings—whether express or implied—must be upheld if supported by substantial evidence. (*People* v. *Gale* (1973) 9 Cal.3d 788, 792 [108 Cal.Rptr. 852, 511 P.2d 1204]; *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].)

The People argue the unlawful interrogation was limited to crimes other than the one charged here. ■■ Actually, the interrogation elicited a highly incriminating remark concerning this offense. When Sisk informed defendant his fingerprint had been found in the contractor's office, defendant responded "The flashlight?"—thereby suggesting he knew a flashlight had been left in the premises and suspected his fingerprint might be on it. Defendant's consent to the search may well have been influenced by knowledge he had already admitted involvement in the crime.

The People incorrectly assert Sisk did not tell defendant during the unlawful interrogation that he was going to obtain a search warrant for defendant's home: "The record in fact shows without contradiction that Keithley's consent to the search of his home and his turning over to Inspector Sisk of the stove that had been taken in the burglary was prompted by Inspector Sisk's statement that he was going to seek a search warrant, and it also makes clear that Keithley's motive in consenting to the search was his concern that the property of his [relatives] not be disturbed. . . . The consideration that motivated Keithley's consent had not been suggested by the officer during the questioning; it only arose after Sisk, in response to Keithley's inquiry, informed him that a search warrant for his home would be sought." (Pet. for writ of mandate, pp. 8-9.)

Even assuming arguendo that defendant agreed to lead Sisk to the stove to prevent his relative's property from being disturbed during a search, Sisk first informed defendant that he intended to secure a search warrant during the unlawful interrogation. "Q. Did you have occasion to discuss with Mr. Keithley in the office upstairs, the possibility of a warrant? [¶] A. Yes, I advised him that I could—I was going to obtain a search warrant on his home. [¶] Q. You did? [¶] A. Yes, sir. [¶] Q. And, how soon after he refused to waive his Miranda rights was that discussion? [¶] A. Within just a very short period."

Finally, the People allege—but fail to show—that the unlawful interrogation ceased during Sisk's absence from the police station. ■ Once a defendant establishes a relationship between evidence and unlawful police activity, the People must prove the taint was purged. (*Nardone* v. *United States* (1939) 308 U.S. 338, 341 [84 L.Ed. 307, 311, 60 S.Ct. 266]; *People* v. *Johnson* (1969) 70 Cal.2d 541, 554 [75 Cal.Rptr. 401, 450 P.2d 865, 43 A.L.R.3d 366].) The People did not carry their burden

of resolving the question whether Lieutenant Dyke interrogated defendant during Sisk's brief absence. Sisk did not know; Dyke did not testify. Therefore, it must be presumed the interrogation continued.

The trial court's ruling is supported by *People* v. *Fioritto* (1968) 68 Cal.2d 714 [68 Cal.Rptr. 817, 441 P.2d 625]. In *Fioritto,* the defendant refused to waive his *Miranda* rights. He was then confronted with his accomplices who had confessed, implicating him. After quarreling with one of them, the defendant was again advised of his *Miranda* rights, again asked to waive them. Signing the waiver this time, he confessed. The sole issue on appeal was admissibility of the confession. While noting that we have repeatedly sanctioned the admission of statements "voluntarily initiated by a suspect," this court reversed the conviction, holding such cases "inapposite under circumstances in which the police initiated resumption of interrogation." (*Id.,* at pp. 719-720.) ▮▮▮ Substantial evidence supports the trial court's finding here that defendant's consent to the search of his home was the fruit of an unlawful interrogation.[4]

The alternative writ of mandate is discharged and the peremptory writ denied.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Richardson, J., concurred.

---

[4]While maintaining their earlier position as a "secondary line of defense," the People took a new position at oral argument, explaining it with the following hypothetical: Suppose police commit a *Miranda-Fioritto* violation and the suspect confesses and consents to a search. Although the confession would be involuntary in the *Miranda* sense of the term, the consent might be voluntary in the "traditional" sense (see *People* v. *Nudd* (1974) 12 Cal.3d 204, 208-209 [115 Cal.Rptr. 372, 524 P.2d 844]), different standards of voluntariness arguably applying to Fourth and Fifth Amendment cases. (See *Schneckloth* v. *Bustamonte* (1973) 412 U.S. 218 [36 L.Ed.2d 854, 93 S.Ct. 2041].) To grant the writ on this theory, we would be required to hold that defendant's consent was voluntary—as a matter of law—in the traditional sense of the term. The facts of this case simply do not support such a holding. Therefore, we do not further consider this belated argument.