Opinion
 

 POCHE, J.
 

 The People seek review by writ of mandate of respondent superior court’s order suppressing evidence.
 

 Defendants McCaffery and Citizen are police officers who were charged with receiving stolen property and with solicitation of burglary. The charges were based upon a search of defendants’ residences pursuant to a warrant.
 

 This case illustrates that in preparing affidavits for search warrants the affiant must—under the compulsion of the Fourth Amendment—take particular care to state explicitly when he or she is drawing conclusions rather than reciting facts. We find that the affiant here drew the
 
 *370
 
 conclusions, described them as facts and by so doing usurped the function our Constitutions place only in the hands of magistrates.
 

 The Affidavit
 

 The sole basis for the warrant was the affidavit of San Francisco Police Inspector James A. Tedesco, which set forth the following:
 
 [1]
 

 That a “confidential reliable informant” in jail on grand theft charges had named Police Officers McCaffery and Citizen (defendants here) as persons to whom he had been selling stolen property; and from whom he had received orders for the theft of property from local stores.
 

 In particular McCaffery bought a 10-inch Italian statue which the informant had stolen from Shreve and Co.
 

 Sometime later McCaffery asked the informant to steal an Ansel Adams photography book which he had seen in Brentano’s book store and he promised to buy any other photography books which the informant could steal from that establishment. A few weeks thereafter the informant stole two Adams books and two other photography books. He contacted defendant McCaffery who paid him $25 for two books; defendant Citizen asked to see the other two books which he agreed to buy for $20.
 

 In the same month McCaffery purchased a stolen book called Africa from the informant for $40 and asked him to steal a book called People of Kau for $10. A day or two later, Citizen, while on patrol with McCaffery, ordered a copy of Africa for himself.
 

 After this conversation with the informant, Inspector Tedesco purchased a copy of Africa for $100 and a copy of People of Kau for $25 and delivered them to the informant who was taken to the vicinity where defendants were on patrol and was then equipped with a hidden microphone-recorder unit.
 

 After contact was made the informant advised defendants that he had the People of Kau book that McCaffery had ordered and paid for as well as the Africa book that Citizen had ordered and that had just been stolen from Brentano’s.
 

 
 *371
 
 The informant stated that he wanted $50 for the Africa book “and Citizen agreed.”
 

 The officers refused to accept delivery of the stolen property at that time; McCaffery also stated that they were a little leery because they didn’t know whether the informant was wired for sound.
 

 McCaffery instructed the informant to drop the books off at the Sportsman’s Bar.
 

 All of this conversation “was confirmed by affiant” after the contact was concluded and affiant had an opportunity to listen to the recording of the conversation; affiant had checked with personnel of Shreve and Co. and had verified that the two statues were stolen; personnel at Brentano’s advised affiant that People of Kau and Africa books had been stolen from the Sutter Street store.
 

 The motion to suppress was submitted on the transcript of the preliminary hearing and additional testimony, particularly that of Inspector Tedesco, the affiant.
 

 Probable Cause
 

 If the informant’s story is believed there was probable cause to search, but it was the duty of the prosecution to establish reliability. “[Experienced stool pigeons or persons criminally involved or disposed” are not regarded as reliable because they are “generally motivated by something other than good citizenship.”
 
 (People
 
 v.
 
 Schulle
 
 (1975) 51 Cal.App.3d 809, atpp. 814-815 [124 Cal.Rptr. 585].)
 

 The “controlled buy” described in the affidavit was intended to serve as that corroboration. An unconfirmed story of illicit sales becomes believable when another such transaction takes place with appropriate steps taken to memorialize it. Here the informant was wired for sound. Unfortunately, technology faltered. The tape recording turned out to be unintelligible to such an extent that in preparing a transcript of what it contained the police had to rely upon the informant himself to describe who was talking and what was being said. Of critical importance was whether or not the defendants had agreed to buy stolen property from the informant. In that regard the “transcript” of the transaction reveals:
 

 “Citizen: How much you want for them?
 

 
 *372
 
 “Informant; Well, I’ll take half a bill. . . .
 

 “Citizen: (Inaudible)
 

 “Informant:. . . Well, the People of Kau ... I owe him that, you see.
 

 “Citizen: (Inaudible)
 

 “Informant: Half a bill. Hey, that’s a motherfucking steal, if you’ll pardon the use of the word, you know.
 

 (noise)
 

 “Citizen: O.k., Joe.
 

 “Informant: Alright. . . .
 

 “Citizen: We’ll see ya, Joe.
 

 “Informant: Four o’clock. O.k., alright. I’m going up there and leave em with him now.
 

 (Noise)”
 

 Neither this purported transcript nor the tape recording was presented to the magistrate. She was given only the affidavit of Inspector Tedesco.
 

 If the defendants agreed to buy goods, knowing that they were stolen, there was clearly probable cause for the search warrant. Under any test the informant’s story would have been corroborated by such an agreement. Conversely, if there was no such compact there was no corroboration contained in the affidavit. That is why the crucial element in the affidavit is the statement that Officer Citizen “agreed” to buy.
 

 What the court at the section 1538.5 hearing was concerned with was whether the affidavit describing the conversation matched the reality of that conversation because “if a magistrate is presented with false or inaccurate information . . . the inferences [s]he draws from such information are not based on reality but on the fantasies of the misinformed or misinforming affiant.
 
 Regardless of whether misstatements are intentionally false or the product of reasonable or unreasonable cerebration, their ineluctable result is an adverse effect upon the normal
 
 
 *373
 

 inference-drawing process of the magistrate.”
 
 (Italics added.)
 
 (Theodore
 
 v.
 
 Superior Court
 
 (1972) 8 Cal.3d 77 at p. 96 [104 Cal.Rptr. 226, 501 P.2d 234].) Our standard for review of the superior court’s order of suppression is clearly spelled out in Justice Clark’s opinion for a unanimous Supreme Court in
 
 People
 
 v.
 
 Superior Court (Keithley),
 
 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585]: “A proceeding under section 1538.5 to suppress evidence is a full hearing on the issues before the superior court sitting as a finder of fact. The power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences is vested in the trial court.
 
 On appeal all presumptions favor proper exercise of that power, and the trial court’s findings—whether express or implied—must be upheld if supported by substantial evidence. ”
 
 (Citations omitted, italics added.) The trial court judge listened to the recording, found that the tape was “almost unintelligible,” that the supposed transcript of it was prepared by having the informant state to Inspector Tedesco what was being said and who was saying it, that “the inaudibles” on that transcript and on the tape come at a “critical stage” and that it was “completely unreasonable” to infer that there was an agreed sale. Although he expressly refused to find that the inspector had made any
 
 intentional
 
 misrepresentations, the judge concluded that the informant was uncorroborated and granted the motion to suppress.
 

 There is substantial evidence to support that determination. Assuming for purposes of argument that the transcript accurately reflects the conversation, it is not obvious that Citizen’s utterance “OK Joe” is in response to anything: it is preceded by “noise” and by “inaudibles” which, as the trial judge noted, come at “crucial stages.” What is more, the transcript upon which Inspector Tedesco relied in drafting the affidavit was taken from a tape recording which the court found to be “almost unintelligible” and that same transcript was prepared with the help of the informant whose unknown credibility is the entire reason for these proceedings. We find that an unintelligible tape recording translated with the help of a presumably unreliable, untested informant does not amount to corroboration.
 

 That is why we have magistrates. If the police had presented the magistrate with a tape recording of the conversation or with a transcript of it and not only with the affidavit, she would have known that she was making the conclusions that “OK Joe” was an affirmative answer to the informant’s offer “I’ll take half a bill.” She would also have known that she was drawing the conclusion that the defendant Citizen was the offeree. Instead, what the magistrate received was a neatly packaged,
 
 *374
 
 predigested conclusion of and by a police inspector: “The [informant] stated that he wanted $50 for the ‘Africa’ book and Citizen agreed.” That conclusion wasn’t labeled as one. If instead the affiant had told the magistrate, “I believe I heard Officer Citizen agree to buy” we would be dealing with a much different case. Our state and federal Constitutions require magistrates, not police officers, to determine whether search warrants may issue. “The policy behind the warrant procedure is ... to encourage that the magistrate rather than the police make, the decision as to the existence of probable cause before the privacy of the citizen is invaded.”
 
 (Skelton
 
 v.
 
 Superior Court
 
 (1969) 1 Cal.3d 144 at p. 153 [81 Cal.Rptr. 613, 460 P.2d 485].) The affidavit here made that impossible.
 

 The People contend, however, that even after that misstatement is stricken from the affidavit, sufficient corroboration of the untested informer remains in a “clear relationship” between the officers and the informer and an indication that the officers were concerned about being overheard. Again we stress that if the tape recording and transcript had been presented to the magistrate we would be presented with a tenable argument. But probable cause must be tested only in the affidavit because that was the sole item before the magistrate. What remains of the affidavit after the section 1538.5 hearing does not amount to factual corroboration of the untested informer. The trial court found the affidavit insufficient and therefore suppressed the evidence. All inferences must be indulged in to support that ruling including any inferences supporting implied findings.
 
 (People
 
 v.
 
 Superior Court (Keithley), supra,
 
 at p. 410.) Any reading of the testimony taken before the trial court compels the result that many portions of the affidavit were stricken and that the trial judge made such implied findings as a part of his suppression order. For example, the affiant stated that he had “verified” that two items had been stolen from Shreve’s but later testified to facts which as a matter of law indicated that nothing had been verified. The entire affidavit is so infected beginning with its bald description of the informant as a “confidential reliable informant” to the closing declaration that all of the conversation between the informant and the defendants had been “confirmed” by affiant. As previously demonstrated, that “confirmation” was nothing more than reliance on the informant for the purpose of interpreting the tape recording. The trial court was concerned with all these misstatements and found the affidavit, as a whole, lacking. The record before us indicates that the trial court’s ruling is fully supported by substantial evidence.
 

 The trial court properly noted “it would have been simpler” to have the magistrate listen to the tape herself and draw her own conclusions.
 
 *375
 
 We stress that not only would this procedure have been simpler, it would have assured the integrity of. the magistrate’s function and in all probability would have resulted in the issuance of a warrant that would have been upheld in a section 1538.5 hearing. The motion to suppress the evidence was properly granted.
 

 The alternative writ is discharged and the petition for writ of mandate is denied.
 

 Caldecott, P. J., and Christian, J., concurred.
 

 [1]
 

 The
 
 complete text of
 
 the affidavit is set forth as exhibit A.