[Crim. No. 19208. First Dist., Div. Four. Mar. 20, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT ST. AMOUR et al., Defendants and Appellants.

COUNSEL

Laurence H. Steffan, under appointment by the Court of Appeal, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CALDECOTT, P. J.**—Appellants William E. Caldwell and Robert St. Amour were charged with violating Health and Safety Code[1] section 11358, subdivision (a) (marijuana cultivation). They pleaded not guilty. Appellants' motion to suppress evidence under Penal Code section 1538.5 was denied. Appellants were found guilty as charged. The appeal is from the judgment.

Humboldt County Deputy Sheriffs Chris Thiel and Frank Vulich were flying from the southern part of the county to Eureka. They were looking for marijuana gardens and observed one about a mile and a half from Honeydew. The garden was first seen with the naked eye from 4,000 to 5,000 feet. The plants were several feet tall.

Marijuana has a distinct green color which becomes easier to observe when contrasting colors surround it. It also has a distinct configuration. Observing with his naked eye, Officer Thiel believed the plants were marijuana but was not positive.

The plane circled the area 3 or 4 times and Thiel used ordinary and then gyrobinoculars from as low as 1,000 or 1,500 feet to observe the plantation. The gyrobinoculars stabilize the view, eliminating the move-

---

[1]Unless otherwise indicated, all further references will be made to the Health and Safety Code.

ment and vibration of the plane to facilitate the observations. The garden observed by the officers was about one-quarter of an acre with a tent on it.

The officers had no warrant or probable cause to believe that marijuana was being cultivated in the area at the time of their flight. Therefore, they returned on August 23, 1977, to update their information for the purpose of obtaining a search warrant.

The plants were on a mountain slope in a deserted area. The nearest town was a mile and a half away. No business or other human activities were observable from the air.

Officer Vulich served the search warrant on August 25, 1977. The closest paved road to the garden is Mattole Road. The road from Mattole Road to the garden was not paved. This road, about 7 or 8 feet wide, had a fence across it about 100 feet from Mattole Road, which was open sufficiently to let people walk through it. Officer Vulich maintained that there were no visible trespass or other signs keeping people off the property.

As Officer Vulich walked through the fence to the garden, the road became a path. The garden was about one-quarter or three-eighths of a mile from Mattole Road and Officer Vulich did not see it from that latter vantage point.

At the garden, Vulich observed appellant St. Amour and informed him that he had a search warrant. The garden was on a slight slope with straw on the ground; this made the marijuana easy to notice from the air. There were branches and leaves placed on the hill in an apparent effort to hide the garden from someone on Mattole Road. The brush and leaves also covered an irrigation system. The tent was camouflaged and a tarp covered some drying marijuana. There were no buildings in the area from which the garden could be observed.

Appellant St. Amour testified that he was renting the property where the garden was located. He stated the fence was there to keep people out and he had three readily visible signs in the area, including one on the fence, telling people to keep out. He also placed the shrubbery to block the view. Nevertheless, St. Amour admitted that the signs were not visible from the air.

I

Appellants' primary contention on appeal is that the aerial search aided with high-powered binoculars constituted an unreasonable search proscribed by the Fourth Amendment of the United States Constitution. Since a search warrant obtained upon information acquired by an illegal search is invalid (*Raymond* v. *Superior Court* (1971) 19 Cal.App.3d 321, 326 [96 Cal.Rptr. 678]) appellants maintain that the trial court should have granted their motion to suppress evidence pursuant to Penal Code section 1538.5. Appellants' arguments are not well taken.

■ It is settled that before the plain view doctrine can be invoked the police officer or officers must have a right to be in the position from which they make the plain view observation. (*Harris* v. *United States* (1968) 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069-1070, 88 S.Ct. 992]; *De Conti* v. *Superior Court* (1971) 18 Cal.App.3d 907, 909 [96 Cal.Rptr. 287].) The first question thus arises whether the deputy sheriffs were entitled to conduct aerial observations and surveillance in the case at bench.

■ In answering this question, we cite the often stated rule that in order to be constitutionally protected, the individual must exhibit an objective, *reasonable* expectation of privacy with respect to the area of search or seizure. (*People* v. *Bradley* (1969) 1 Cal.3d 80, 84 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1100 [80 Cal.Rptr. 633, 458 P.2d 713]; *Dean* v. *Superior Court* (1973) 35 Cal.App.3d 112, 116 [110 Cal.Rptr. 585].) ■ While the constitutional privilege of protecting one's privacy covers not only the ground, but may extend also into the airspace, it is absolutely essential that the person affected exhibit a reasonable expectation (as opposed to mere subjective, personal desire) that the activity in question be so protected. The reasonable expectation to protect the airspace overlying the land, however, cannot be demonstrated by measures taken to defend the land from earthly intrusions (e.g., by setting up a roadblock, trespass signs or by hiding the area or activity from ground observations). Rather the individual seeking constitutional safeguards must show that the land is used in accordance with the common habits of people engaged in the cultivation of agricultural land who exhibit an expectation of privacy with respect to the pursuit in question.

The Fourth Amendment privilege may ascend also into the airspace. It is fundamental that in order to be immune from air surveillances or overflights, the person controlling the land must exhibit not merely a subjective desire, but rather an objective, reasonable expectation of privacy with respect to the airspace in question. However, the owner or other lawful user of land cannot invoke the constitutional protection against an air intrusion by a mere showing that he took unmistakable measures to protect his land from earthly encroachments. The case law makes it clear that a subjective desire to hide the contraband from aerial surveillance is not sufficient to establish the requisite reasonable expectation of privacy. On the contrary, in order to be constitutionally protected from overflights, the person must show that the land in question is expected to be private according to the common habits of persons engaged in agriculture.

In arriving at the above conclusions we are greatly aided by *Dean* v. *Superior Court, supra*, 35 Cal.App.3d 112, and *Burkholder* v. *Superior Court* (1979) 96 Cal.App.3d 421 [158 Cal.Rptr. 86]. In *Dean*, the police officers made several flights over defendant's land at altitudes ranging from 300 to 700 feet and by using binoculars they observed a growing marijuana plantation. In upholding the constitutional validity of the overflights and the seizure of evidence by virtue of a warrantless search, the court first pointed out that: "*One who establishes a three-quarter-acre tract of cultivation surrounded by forests exhibits no reasonable expectation of immunity from overflight.* The contraband character of his crop doubtless arouses an internal, uncommunicated need for secrecy; the need is not exhibited, entirely subjective, highly personalized, and not consistent with the common habits of mankind in the use of agricultural and woodland areas. Aside from an uncommunicated need to hide his clandestine activity, *the occupant exhibits no reasonable expectation of privacy consistent with the common habits of persons engaged in agriculture. The aerial overflights which revealed petitioner's open marijuana field did not violate Fourth Amendment restrictions,*" then concluded that: "*When the police have a plain view of contraband from a portion of the premises as to which the occupant has exhibited no reasonable expectation of privacy, there is no search in a constitutional sense; the evidence so displayed is admissible.*" (*Dean* v. *Superior Court, supra*, at pp. 117-118; italics added.)

The constitutional validity of aerial overflights was approved also in *Burkholder* v. *Superior Court, supra*. In *Burkholder*, the police officers

conducted aerial observations at altitudes of 1,500 to 2,000 feet as a result of which they discovered with the aid of binoculars and a telephoto lens, a large marijuana field located in a heavily wooded, mountainous area observable only from the air. In holding that the aerial surveillance of the marijuana vegetation did not infringe on the defendant's constitutional rights, the court underlined that "*a possessor of land devoted to the cultivation of contraband can exhibit no reasonable expectation of privacy from an overflight consistent with the common habits of persons engaged in agrarian pursuits*," and when such contraband is plainly visible from a vantage point where the officers had a right to be, there can be no expectation of privacy and no search within the meaning of the Constitution. (*Burkholder* v. *Superior Court, supra,* at p. 425; italics added.)

We briefly note that *People* v. *Sneed* (1973) 32 Cal.App.3d 535 [108 Cal.Rptr. 146], the primary authority cited by appellants, is factually distinguishable and not controlling in the case at bench. In *Sneed*, the aerial surveillance was held violative of appellant's Fourth Amendment rights because the helicopter hovered about 20 to 25 feet above the ground and the marijuana plantation was discovered in appellant's backyard. By contrast, in the case at bench, the overflights were in high altitudes and the marijuana field was located on a slope of mountain far away from inhabited places. Even more to the point, the court in *Sneed* emphasized that although the positioning of the helicopter right above appellant's backyard was an illegal act and an obtrusive invasion of his privacy, "...*appellant certainly had no reasonable expectation of privacy...from airplanes and helicopters flying at legal and reasonable heights*" (*People* v. *Sneed, supra,* at p. 543; italics added), the exact situation presented by the instant case.

Appellants' additional argument that the use of high-powered binoculars during the overflights was per se illegal, is also unmeritorious. ■ The validity of the surveillance turns on the reasonable expectation of privacy rather than upon the means used to view or hear it. So long as the object which is viewed is perceptible to the naked eye, the person has no reasonable expectation of privacy and as a consequence, the government may use technological aid of whatever type without infringing on the person's Fourth Amendment rights. (*People* v. *Arno* (1979) 90 Cal.App.3d 505, 511-512 [153 Cal.Rptr. 624]; *Burkholder* v. *Superior Court, supra,* 96 Cal.App.3d at p. 426.)

As spelled out earlier, the officers here were flying at normal heights and observed the marijuana plantation from a place where they had a right to be. Since the marijuana cultivation was in plain view, appellants could not display any reasonable expectation of privacy thereto. Moreover, the record is clear that Officer Thiel made his initial observation with the naked eye[2] and used binoculars only thereafter in order to positively identify the green-looking vegetation bearing the indicia of marijuana. The case at bench thus falls squarely within the aforecited authorities rendering the use of binoculars, a widely accepted aid to visual enhancement, perfectly justified and legal.

## II

As statutorily defined, marijuana means all parts of the plant Cannabis sativa L. (§ 11018). Based upon the statutory definition of the drug, appellants level a two-pronged challenge against the judgment of conviction. First they contend since there is a growing public awareness that marijuana is not monotypic and since, in the opinion of several botanists, marijuana is deemed polytypic, including not only Cannabis sativa L., but also Cannabis indica as a separate and distinct species, in order to obtain conviction the prosecution had the burden of proving that the marijuana violation in question involved Cannabis sativa L.,

---

[2] The illustrative portion of the record reads as follows:

"Q. Do you have information—do you know approximately what your height was?

"A. Four or five thousand feet.

"Q. Is that when you first made the observation of the marijuana fields?

"A. Yes.

"Q. Now, *was this observation made with the naked eye or with some other type of device?*

"A. *With the naked eye.*

"Q. Can you describe for the Court what you saw from the height of four thousand, five thousand feet that caught your attention?

"A. The green of the marijuana patch.

"Q. Okay. Now, would you describe for the Court briefly what type of terrain we're talking about here that this alleged patch was situated in?

"A. Basically, it would be on the west slope of a mountain. It's open land or open prairies in it, brown grass, a lot of scrub oak and fir in the area.

"Q. Were there any other type of green vegetation in the area adjacent to these marijuana patches?

"A. Yes, there was.

"Q. What type of vegetation was that?

"A. A fern of some type.

"Q. *From a height of four or five thousand feet were you able to tell a difference between the ferns and the marijuana?*

"A. *Yes.*

"Q. *With the unaided eye or with the binoculars?*

"A. *With the naked eye.*" (Italics added.)

rather than Cannabis indica. In the alternative, appellants maintain that insofar as the statutory definition encompasses all types of marijuana, the statute violates the basic precept of due process because it fails to forewarn the potential offenders of the nature of the acts prohibited under the law. Neither of appellants' arguments is tenable.

■ In passing upon the first contention, the case law renders it clear that the term "Cannabis sativa L.," includes all plants popularly known as marijuana. As the court stated it in *People* v. *Van Alstyne* (1975) 46 Cal.App.3d 900, 917 [121 Cal.Rptr. 363]: *"...we hold that the term 'Cannabis sativa L.' in section 11018 must be construed as a general term which includes all plants popularly known as marijuana that contain the toxic agent THC.* We further note that every federal appeals court that has addressed the contention now before us has reached the same conclusion. (See *United States* v. *Walton, supra; United States* v. *Honneus, supra; United States* v. *Kinsey* (2d Cir. 1974) 505 F.2d 1354; *United States* v. *Gaines* (5th Cir. 1974) 489 F.2d 690; *United States* v. *Rothberg* (2d Cir. 1973) 480 F.2d 534, cert. den. 414 U.S. 856...; *United States* v. *Moore* (3d Cir. 1971) 446 F.2d 448....)" (Italics added.)

Since California law does not differentiate among the different types of marijuana, it is plain that there is no legal requisite that the prosecution should specify and prove the species of marijuana which form the basis of the charged violation.

Appellants' alternative argument is equally without merit. While *Van Alstyne* pointed out that the present statutory definition may prove inadequate for the purposes of due process in future cases, such a situation arises only if "...the term 'Cannabis sativa L.' has so *changed in general usage and understanding* since the time of the 1972 enactment of section 11018 that the section no longer provides fair notice to potential violators of the nature of the acts prohibited thereunder...." (*People* v. *Van Alstyne, supra,* at p. 918; italics added.)

In the present case, the evidence produced by appellants showed only that experts honestly differ as to whether the marijuana is monotypic or polytypic and that there is an increasing number of people who are aware of the controversy. Most notably, however, the record fell short of proving that since 1972 there has been a decisive change in the understanding and perception of the general public as to what constitutes

marijuana. Just to the contrary, Professor Smith, appellants' expert witness, explicitly stated that the majority of people use the common name of marijuana in a very broad and inclusive sense without differentiation as to the alleged subspecies of the drug. ■ In view of this record we cannot say that the members of the general public had reasonable doubt as to the meaning of marijuana and/or would have to guess as to what constitutes a penal violation under the statute and thereby be forced to act at their peril without fair notice as to the real meaning of the law.

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 14, 1980.