[No. A028203. First Dist., Div. Three. Apr. 22, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD DARRYL SMITH, Defendant and Appellant.

COUNSEL

Paul A. Sullivan for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**MERRILL, J.**—Appellant Richard Darryl Smith (Smith) was charged by information with a felony violation of Health and Safety Code section 11358, the planting, cultivating, harvesting, drying and processing of mar-

ijuana. Following hearing, Smith's Penal Code section 1538.5[1] motion to suppress evidence was denied. Thereafter, Smith entered a plea of no contest and was found guilty as charged.

Smith was sentenced to two years in state prison. His sentence was suspended, however, and he was placed on probation for 36 months. This appeal followed.

I

On November 4, 1982, Lake County Deputy Sheriff Roger Whitchurch and a few other officers from the Lake County Sheriff's Office were in an airplane conducting aerial surveillance for marijuana in semirural areas of Lake County. The flight was one of many routine overflights conducted during the marijuana season. Deputy Whitchurch testified at the suppression hearing that he specifically flew over Smith's property during the course of this flight because he had received information that a methamphetamine lab was being operated in an underground bunker beside a garage and near a mobilehome. While looking for this lab, Deputy Whitchurch observed the marijuana garden. The deputies took photographs of the suspected marijuana garden. Later these photographs were matched with the county assessor's map to determine the parcel number and description of the property.

On the following day, Deputy Whitchurch obtained a search warrant from a magistrate of the Clearlake Judicial District Justice Court. The affidavit in support of the search warrant related Deputy Whitchurch's extensive background and training in narcotics investigation and it specifically set forth his background in visual identification of marijuana plants. It also set forth that Deputy Whitchurch observed the marijuana plants during the overflight, while flying from an altitude of not less than one thousand feet and without the use of visual aids. Attached to the affidavit were the assessor's map and the photographs.

The search warrant authorized the search of Smith's premises to the following extent: "1. Marijuana plants under cultivation. 2. Marijuana seeds. 3. Equipment and tools associated with and used for cultivation or processing marijuana, including, but not limited to, irrigation devices, ground processing devices, drying screens, scales, packing materials and books of account. 4. Articles of personal property tending to establish the identity of person or persons in control of marijuana and cultivated areas, vehicles, structures, storage areas, residences, or containers where marijuana may be found."

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

On November 8, 1982, Deputy Whitchurch, accompanied by other deputies, served the search warrant. The deputies searched the residence and the property, discovering a marijuana garden and various other items of evidence in the mobilehome.

Deputy Whitchurch served the warrant upon the occupant of the mobilehome and then went to the marijuana garden. In the interim, Deputy Robert Long had gone directly to the marijuana garden. He peered over the five-foot high fence and saw Smith pulling marijuana plants out of the ground. Smith was arrested and the plants were seized. In addition, the deputies seized two black notebooks which referred to the "crop," telephone receipts, two bottles labeled "Procaine," two bottles marked "Vita Blend," four plastic bindles of white powder, personal checks, two notebooks, empty plastic baggies and a toolbox.

## II

Smith urges on appeal that the search warrant was invalid because it was premised on an unreasonable search, i.e., the aerial surveillance during the overflight. Smith specifically contends that he had a reasonable expectation of privacy in his marijuana garden. Thus, the argument continues, the overflight was a warrantless search which unconstitutionally invaded that privacy. We find this to be an unmeritorious contention.

This issue was never raised during the proceedings below. Evidence Code section 353 provides that "[a] verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the *specific ground* of the objection or *motion* . . . ." (Italics added.)

It is a well established rule that issues relating to the admissibility of evidence must be tendered at the trial level and a ruling obtained thereon after each side has had the opportunity to fully develop the facts. (Evid. Code, § 353, subd. (a); *People* v. *Pranke* (1970) 12 Cal.App.3d 935, 941 [91 Cal.Rptr. 129].) An appellate court is precluded from reviewing questions concerning the admissibility of evidence for the first time on appeal. (*People* v. *Ortiz* (1969) 276 Cal.App.2d 1, 6-7 [80 Cal.Rptr. 469], citing Evid. Code, § 353; *People* v. *De Santiago* (1969) 71 Cal.2d 18, 22 [76 Cal.Rptr. 809, 453 P.2d 353]; *People* v. *Robinson* (1965) 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834]; *People* v. *Rodriguez* (1969) 274 Cal.App.2d 770, 775 [79 Cal.Rptr. 240]; *People* v. *Soto* (1968) 262 Cal.App.2d 180, 184 [68 Cal.Rptr. 500]; see also *People* v. *Amata* (1969)

270 Cal.App.2d 575, 582-583.) The failure to object to evidence at trial on the same ground urged on appeal precludes raising that issue on appeal. (*People* v. *Fonville* (1973) 35 Cal.App.3d 693, 707 [111 Cal.Rptr. 53].) ■ One of the reasons courts give for precluding review of a newly advanced objection on appeal is that the prosecution might have been able to offer additional evidence on the question if it had been faced with a proper objection. (*People* v. *Ibarra* (1963) 60 Cal.2d 460, 462-463 [34 Cal.Rptr. 863, 386 P.2d 487]; *People* v. *Payne* (1969) 1 Cal.App.3d 361, 365 [81 Cal.Rptr. 635], citing *People* v. *Davis* (1968) 265 Cal.App.2d 341, 346 [71 Cal.Rptr. 242].)

Furthermore, when this well-settled principle is applied to section 1538.5 suppression hearings, the rationale for precluding review of issues becomes particularly compelling since these hearings are specifically designed to allow for the determination of all issues relating to suppression of evidence obtained by the allegedly improper conduct of the police. (*People* v. *Pranke, supra*, 12 Cal.App.3d at pp. 941-942.)

■ Further support for this principle is in the language of section 1538.5, subdivision (m). The provision, inter alia, states that "[a] defendant may seek *further review* of the validity of a search or seizure on appeal from a conviction in a criminal case notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty. . . ." (§ 1538.5, subd. (m), italics added.) These words "further review" clearly demonstrate that section 1538.5 only authorizes review of a search and seizure question which has been originally presented to the trial court. The Legislature did not intend to permit an appellate court to make an initial and plenary factual decision on a search and seizure issue. (*People* v. *Pranke, supra*, 12 Cal.App.3d at p. 942.)

■ Our review of the record demonstrates that the issue of Smith's alleged reasonable expectation of privacy and the resulting unconstitutionality of the overflight was never raised during the proceedings below. Therefore, it is not properly before this court for review. Smith's counsel did not include this argument as a basis to challenge the evidence in the section 1538.5 motion to suppress. The grounds advanced as the bases of the suppression motion pertained to the sufficiency of the affidavit to support the search warrant, to the alleged overbreadth of the search warrant language and to traversal of the search warrant. Smith's counsel also did not verbally raise the issue during the suppression hearing. Thus, the district attorney was unable to present evidence on this issue, and the trial court made no decision on "this" search which would allow for our "further review." (*Ibid.*)

Even if we assume that this issue was preserved for appeal, we fail to see how Smith has demonstrated his reasonable expectation of privacy during the proceedings below.

Preliminarily, we note that the trial court, as the finder of fact at a suppression hearing, is vested with the power to judge the credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences. On appeal, all presumptions favor the trial court's exercise of the power. Both the express and implied factual findings of the trial court at a suppression hearing will be upheld on appeal if there is substantial evidence to support it. (*People* v. *Superior Court* (*Keithley*) (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585], citing *People* v. *Gale* (1973) 9 Cal.3d 788, 792 [108 Cal.Rptr. 852, 511 P.2d 1204].) Further, it is the appellate court's obligation on review from a ruling in a suppression hearing, to measure the findings of fact against the constitutional standard of reasonableness. (*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].)

In determining whether there was a violation of the proscription against unreasonable searches contained in the Fourth Amendment of the United States Constitution, we must decide whether the person has "exhibited a subjective expectation of privacy" which is objectively reasonable and, if so, whether an unreasonable governmental intrusion has violated that expectation. (*People* v. *Bradley* (1969) 1 Cal.3d 80, 84-86 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1100 [80 Cal.Rptr. 633, 458 P.2d 713]; *People* v. *Berutko* (1969) 71 Cal.2d 84, 93-94 [77 Cal.Rptr. 217, 453 P.2d 721]; *Burkholder* v. *Superior Court* (1979) 96 Cal.App.3d 421, 425 [158 Cal.Rptr. 86].) While reasonableness depends on the totality of facts and circumstances of each case, a possessor of land devoted to the cultivation of contraband cannot exhibit an objectively reasonable expectation of privacy from overflight which is consistent with the common habits of other cultivators of agricultural land. (*Burkholder* v. *Superior Court, supra,* 96 Cal.App.3d at p. 425, citing *Dean* v. *Superior Court* (1973) 35 Cal.App.3d 112, 118 [110 Cal.Rptr. 585].)

We find the opinions in *People* v. *St. Amour* (1980) 104 Cal.App.3d 886 [163 Cal.Rptr. 187], *Dean* v. *Superior Court, supra,* 35 Cal.App.3d 112, and *People* v. *Joubert* (1981) 118 Cal.App.3d 637 [173 Cal.Rptr. 428], to be particularly relevant to our decision in the instant case. The appellants in *St. Amour,* raising arguments almost identical to those of Smith, contended that their Fourth Amendment rights to privacy had been violated by the aerial surveillance of their marijuana garden and that their suppression motion should therefore have been granted. The Court of Appeal delineated the nature and extent of the constitutional protection against unreasonable

searches in this context. "While the constitutional privilege of protecting one's privacy covers not only the ground, but may extend also into the airspace, it is absolutely essential that the person affected exhibit a reasonable expectation (as opposed to mere subjective, personal desire) that the activity in question be so protected. The reasonable expectation to protect the airspace overlying the land, however, cannot be demonstrated by measures taken to defend the land from earthly intrusions (e.g., by setting up a roadblock, trespass signs or by hiding the area or activity from ground observations). Rather the individual seeking constitutional safeguards must show that the land is used in accordance with the common habits of people engaged in the cultivation of agricultural land who exhibit an expectation of privacy with respect to the pursuit in question." (*People* v. *St. Amour, supra*, 104 Cal.App.3d at p. 891.)

Further, the *St. Amour* court declared that in order to be immune from aerial surveillance one must exhibit an "*objective,* reasonable expectation of privacy with respect to the airspace in question" as opposed to a subjective expectation. (*People* v. *St. Amour, supra*, 104 Cal.App.3d at p. 892, italics added.)

In *St. Amour*, the sheriff's deputies were on a routine flight looking for marijuana gardens. From the height of 5,000 feet they observed what they believed to be a marijuana garden. Then, from a height of 1,000 to 1,500 feet, the deputies observed the garden again with binoculars. The plantation was in a rural, mountainous area of Humboldt County. (*Id.*, at pp. 889-890.) In affirming the judgment, the Court of Appeal held that the appellants in *St. Amour* exhibited no reasonable expectation of privacy from overflights at legal and reasonable heights. (*Id.*, at pp. 893-894.) The overflight in *St. Amour* was at 1,000 to 1,500 feet. (*Id.*, at p. 889.)

The *Dean* opinion squarely addressed the same issue of a person's reasonable expectation of privacy when growing contraband. The Court of Appeal proclaimed that while one may have a subjective desire to be immune from overflights, an objective and reasonable expectation of privacy must be exhibited. (*Dean* v. *Superior Court, supra*, 35 Cal.App.3d at pp. 117-118.) The *Dean* court also explained that the constitutional protections of the Fourth Amendment will not be afforded to all expectations of privacy, but only those expectations that are reasonable in the sense that they are consistent with the common habits of mankind. (*Id.*, at pp. 117-118.) Citing *People* v. *Dumas* (1973) 9 Cal.3d 871, 882-883 [109 Cal.Rptr. 304, 512 P.2d 1208], the *Dean* court outlined the "hierarchy of protection" with regard to expectations of privacy. While expectations in connection with some domains may be reasonable, expectations in connection with

other domains may be unreasonable. (*Dean* v. *Superior Court, supra,* 35 Cal.App.3d at p. 117.)

In *Dean,* the Court of Appeal found that one who grows 15 to 20 feet high marijuana plants on a three-quarter acre tract surrounded by forests does not entertain a reasonable expectation of privacy with regard to over-flights. (*Id.,* at p. 117.) His expectation of privacy is "not exhibited, entirely subjective, highly personalized, and not consistent with the common habits of mankind in the use of agricultural and woodland areas." (*Id.,* at p. 118.)

The Court of Appeal in *People* v. *Joubert, supra,* 118 Cal.App.3d 637, in reversing the trial court's grant of a suppression motion, held that optically aided aerial surveillances of marijuana patches growing in open fields is constitutionally permissible. The overflight in *Joubert* was of a rural parcel in Madera County. The affidavit in support of the search warrant was based on facts obtained as a result of the contested aerial surveillance. The *Joubert* court found that California law permits aerial surveillance of marijuana cultivation. (*Id.,* at pp. 640-646, citing *People* v. *St. Amour, supra,* 104 Cal.App.3d at pp. 889-893; *Burkholder* v. *Superior Court, supra,* 96 Cal.App.3d at pp. 425-426; *Dean* v. *Superior Court, supra,* 35 Cal.App.3d at pp. 114-118.)

▇▇▇ The immediate question then is whether Smith's alleged subjective expectation of privacy from overflight was both objectively exhibited and reasonable.

The record is devoid of measures taken by Smith to exhibit his reasonable expectation of privacy from overflight. His expectation of immunity from aerial surveillance is purely subjective and highly unreasonable in light of the common habits of other semirural cultivators. It is unreasonable for one cultivating a crop in a haphazardly fenced-in area to expect privacy from overhead.

Moreover, it does not even appear that Smith objectively demonstrated a reasonable expectation of privacy in his garden from earthly intrusions. The record reveals that Smith's cultivation of marijuana occurred in a semirural area of Lake County, near a mobilehome. The garden was enclosed by a five-foot high fence. Someone standing inside the marijuana garden could easily see what was occurring outside the fence, and, likewise, a person on the outside could observe what was taking place inside the garden. Smith testified that he could see through the fence and out of the garden. He observed the officers as they approached his garden. A passerby could look into the garden as did Deputy Long. In any event, Smith's attempts to

exhibit his expectation of privacy from passersby do not serve to protect him from overflights.

Smith places great reliance on *People* v. *Ciraolo* (1984) 161 Cal.App.3d 1081 [208 Cal.Rptr. 93], cert. granted June 3, 1985, 471 U.S. 1134 [86 L.Ed.2d 691, 105 S.Ct. 2672]. The Court of Appeal in *Ciraolo* found that a warrantless overflight of the defendant's backyard was unconstitutional in that the overflight constituted a "search" of area within defendant's curtilage and thus violated defendant's reasonable expectation of privacy. We distinguish *Ciraolo* on its facts. The property therein was a home located in the City of Santa Clara. The defendant had completely enclosed his backyard with two fences; a six-foot high outer fence and a ten-foot high inner fence. This is a decidedly different scenario than a routine overflight of semirural areas of Lake County in general and of Smith's marijuana garden in particular. The fence surrounding Smith's garden was only five feet high and allowed people outside to see the activities occurring inside the garden.

Furthermore, there is no showing that Smith's marijuana garden was within the curtilage. ▇ The "land immediately surrounding and associated with the home" is the area within the curtilage which is deemed entitled to the right to privacy embodied in the Fourth Amendment to the United States Constitution. (*Oliver* v. *United States* (1984) 466 U.S. 170, 178-180 [80 L.Ed.2d 214, 223-225, 104 S.Ct. 1735].) However, the conclusion that an individual automatically has a reasonable expectation of privacy by virtue of a claim that a certain area is within the curtilage, is not supported by the law. Before the Fourth Amendment protection may be applied, many factors must be considered concerning an individual's claim of reasonable expectation of privacy. (*Id.,* at pp. 177-179 [80 L.Ed.2d at pp. 223-225].)

▇ The testimony presented at the suppression hearing below supports the implied finding of the trial court that Smith could not have a reasonable expectation of privacy in his garden based on the theory that the garden is included in the curtilage. The record reveals that the garden is situated approximately 90 to 120 feet away from the mobilehome. The only activity which apparently was conducted in the garden was the cultivation of marijuana. The record does not disclose that activities associated with the home occurred there. Smith failed to present evidence at the suppression hearing which would support a trial court's conclusion that the garden is within the curtilage.

Our Supreme Court recently held that the warrantless aerial surveillance of an individual's fenced backyard violated the proscription against unreasonable search and seizure contained within article I, section 13 of the

California Constitution. (*People* v. *Cook* (1985) 41 Cal.3d 373, 375-376, 382, fn. 4 [221 Cal.Rptr. 499, 710 P.2d 299].) The court found that an "enclosed back yard whose outer boundary was within yards of appellant's dwelling clearly satisfies [the] definition" of curtilage. (*Id.*, at p. 377.) In *Cook,* the defendant's backyard was surrounded on three sides by an eight-foot-high solid wood fence, and on the fourth side by the residence. Surrounding both the house and the enclosure was a six-foot-high fence. However, the *Cook* opinion is not controlling to our decision here for a number of reasons. ■ First, unlike the instant case, in *Cook* the question of the defendant's reasonable expectation of privacy in the marijuana garden was an issue before the trial court at the suppression hearing. (*Id.,* at p. 378.) Smith did not present such a challenge at his suppression hearing and, thus, the question of his reasonable expectation of privacy in an area alleged to be curtilage may not be reviewed on appeal. (*Ante,* at pp. 79-80.)

■ Second, *Cook* is distinguishable on its facts in that the record in the case at bench does not establish that the marijuana garden was within the curtilage. Testimony was presented at the suppression hearing that the marijuana garden is located 90 to 120 feet from a mobilehome which was on the property. In addition, the record does not demonstrate that the garden was being used for activities associated with the home. While the *Cook* court concluded that the area in question therein should be afforded constitutional protection because of its position within the curtilage, the trial court herein had no facts from which to make such a conclusion.

■ Finally, *Cook*'s reliance on the California Constitution, article I, section 13, as a basis for excluding evidence therein cannot be applied to the case at bench because the relevant events herein took place after the adoption of article I, section 28, subdivision (d), of the California Constitution, known as Proposition 8. Our Supreme Court in *In re Lance W.* (1985) 37 Cal.3d 873, 887-890 [210 Cal.Rptr. 631, 694 P.2d 744], held that Proposition 8 abrogated independent state grounds as a basis for the exclusion of evidence and was intended to permit exclusion of evidence only if its exclusion is required by the United States Constitution. We have determined that the Fourth Amendment to the United States Constitution does not mandate the exclusion of the evidence in this case.

### III

■ Smith also contests the validity of the search warrant on the basis that the affidavit in support thereof does not sufficiently allege probable cause in that it is conclusory. Smith cites the language that there are "approximately twelve marijuana plants planted in even rows" as being the

language in question. He claims the affidavit lacks articulable facts which support this purported conclusory language with regard to both the identification of marijuana and the statement that this cultivation occurred on Smith's property.

We begin our analysis by again pointing out that our scope of review of a trial court's ruling in suppression hearings is very narrow as the trial court is vested with great discretion in deciding all factual questions. (*Ante,* at p. 81.) All presumptions favor the proper exercise of that power. The express or implied findings of the trial court will be upheld on appeal if there is substantial evidence to support it. (*People* v. *Superior Court (Keithley),* *supra,* 13 Cal.3d at p. 410; see also *People* v. *Superior Court (McCaffery)* (1979) 94 Cal.App.3d 367, 373 [156 Cal.Rptr. 416].) All reasonable legitimate inferences are to be indulged in order to uphold the findings of the trial court. (*People* v. *Pellegrin* (1977) 78 Cal.App.3d 913, 916 [144 Cal.Rptr. 421].)

Further, an affidavit in support of a search warrant carries with it a presumption of validity. (*Franks* v. *Delaware* (1978) 438 U.S. 154, 171 [57 L.Ed.2d 667, 681-682, 98 S.Ct. 2674].) The affidavit must be viewed as a whole in a commonsense manner. (*People* v. *Superior Court* (1972) 6 Cal.3d 704, 711 [100 Cal.Rptr. 319, 493 P.2d 1183].) "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' [Citation.] 'A grudging or negative attitude by reviewing courts toward warrants,' [citation], is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; 'courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.' [Citation.]" (*Illinois* v. *Gates* (1983) 462 U.S. 213, 236 [76 L.Ed.2d 527, 546, 547, 103 S.Ct. 2317], quoting *Spinelli* v. *United States* (1969) 393 U.S. 410, 419 [21 L.Ed.2d 637, 645, 646, 89 S.Ct. 584] and *United States* v. *Ventresca* (1964) 380 U.S. 102, 108, 109 [13 L.Ed.2d 684, 689, 85 S.Ct. 741].) The preference accorded to warrants may determine the marginal case. (*Jones* v. *United States* (1960) 362 U.S. 257, 270 [4 L.Ed.2d 697, 707, 708, 80 S.Ct. 725, 78 A.L.R.2d 233], overruled on other grounds *United States* v. *Salvucci* (1980) 448 U.S. 84 [65 L.Ed.2d 619, 100 S.Ct. 2547]; *People* v. *Mesa* (1975) 14 Cal.3d 466, 469 [121 Cal.Rptr. 473, 535 P.2d 337].)

It is a long established rule that a search warrant affidavit containing only the opinions and conclusions of the affiant, without disclosure of the underlying facts, will not constitute "probable cause supported by oath or affirmation" as required by the Fourth Amendment of the United States Constitution. (*People* v. *Castro* (1967) 249 Cal.App.2d 168, 171 [57 Cal.Rptr. 108].) A search warrant affidavit should leave any significant in-

ference-drawing to the magistrate. (*People* v. *Caffott* (1980) 105 Cal.App.3d 775, 781 [164 Cal.Rptr. 499].) At the least, the magistrate must be afforded the opportunity to test any significant inference drawn by the affiant. Accordingly, the Fourth Amendment of the United States Constitution requires that an affiant take particular care to state explicitly when conclusions are being drawn and when facts are being stated. (*Ibid.*)

■ Finally, *United States* v. *Leon* (1984) 468 U.S. 897, 919-924 [82 L.Ed.2d 677, 696-699, 104 S.Ct. 3405], held that while suppression of evidence is the appropriate remedy if the magistrate or judge was misled into issuing the warrant by information in an affidavit that the affiant knew was false or should have known was false, there are minimal or no benefits to the suppression of evidence "obtained in objectively reasonable reliance on a subsequently invalidated search warrant . . . ." These marginal or nonexistent benefits do not justify the substantial costs of exclusion. (*Id.*, at p. 922 [82 L.Ed.2d at p. 698].)

■ In the instant case, the affidavit submitted by Deputy Whitchurch provided in part the following: that on November 4, 1982, at approximately 3:10 p.m. he conducted aerial surveillance for marijuana cultivation in Lake County, from an altitude of no less than 1,000 feet; that during the overflight he observed a white mobilehome with brown trim, a 15- by 30-foot wood-framed building and a marijuana garden; that the garden had "twelve marijuana plants planted in even rows"; that he photographed the garden and structures from the air; that the parcel in which these structures and the garden are located is assessor's parcel number 10-029-23, in Lake County portrayed in book 10, page 29 of the assessor's parcel map; that the parcel is found by traveling a certain route south from Highway 20; that the affiant traveled that route; that the affiant has extensive narcotics investigation training and work experience as a deputy sheriff in both Lake and Sonoma Counties; and that, based on this training and experience, marijuana plants are being cultivated in the garden described.

The implied finding of the trial court, in its denial of the suppression motion, is that probable cause existed in the affidavit in support of the search warrant. Reviewing the affidavit as a whole, we find there to be substantial evidence supporting the trial court's implied finding of probable cause. The affidavit delineated Deputy Whitchurch's narcotics investigation training in great detail. It specifically stated that on three occasions Deputy Whitchurch had formal training classes in the "visual identification of marijuana . . . ." In addition, Deputy Whitchurch stated that on 140 occasions he had observed growing marijuana plants under cultivation and on 60 occasions he personally made aerial observations of suspected marijuana gardens. From these facts, the trial court could reasonably conclude that the affidavit al-

lowed a magistrate to infer that Whitchurch identified the plants as marijuana based on his extensive training and experience in the identification of marijuana. The magistrate's inference-drawing powers have not been usurped by such language. The contested language is not a conclusion without the underlying facts.

Deputy Whitchurch's affidavit also states that he observed and photographed the mobilehome, wood-framed structure and marijuana garden "on the property described in Exhibit 'B'." His affidavit does not set forth how he identified Smith's property as such. However, the affidavit does include the Lake County assessor's parcel number for the property and a complete description of how to reach the property when traveling by road. A magistrate could infer that Deputy Whitchurch matched his photographs of the area with the assessor's map and concluded that the property in question was Smith's property.

■■■ Further, the warrant in this case appears to be facially valid. Given that *Leon*'s good faith exception to the exclusionary rule does not allow for the suppression of evidence obtained in objectively reasonable reliance on a search warrant valid on its face, the allegedly conclusory language pertaining to the property identification in this affidavit does not compel suppression of the evidence. Smith has proffered no evidence from which we could conclude that the officers' reliance on the warrant was anything but in good faith.

## IV

■■■ The last contention raised by Smith is that the warrant is invalid because it authorizes an exploratory search and therefore it is a general warrant proscribed by the Fourth Amendment's protection against unreasonable searches and the section 1529 requirement of a particular description. We do not agree. ■■■ Even if the language in question may have authorized a general search, the warrant as a whole, does not become invalid thereby.

■■■ In *Burrows* v. *Superior Court* (1974) 13 Cal.3d 238, 249 [118 Cal.Rptr. 166, 529 P.2d 590], our Supreme Court reiterated the federal and state constitutional requirement that a search warrant must particularly describe the place to be searched and the things to be seized. This particularity requirement is designed to protect against general exploratory searches which unreasonably interfere with an individual's right to privacy. (*Ibid.*) Further, section 1529 requires that the things to be seized be described with "reasonable particularity." If the warrant contains a "meaningful restriction" upon the objects to be seized, it has been held that this section 1529

requirement has been met. (*Ibid.;* see also *People* v. *Tockgo* (1983) 145 Cal.App.3d 635, 640 [193 Cal.Rptr. 503]; *Nunes* v. *Superior Court* (1980) 100 Cal.App.3d 915, 933 [161 Cal.Rptr. 351].) However, the requirement of reasonable particularity is a flexible concept, reflecting the degree of detail known by the affiant and presented to the magistrate. While a general description may be sufficient where probable cause is shown and a more specific identification is impossible, greater specificity is required in a case where the identity of the objects is known. (*People* v. *Tockgo, supra,* 145 Cal.App.3d at p. 640.) On appeal, the question of whether the description in the warrant is sufficiently definite is a question of law upon which an appellate court must exercise independent judgment. (*Nunes* v. *Superior Court, supra,* 100 Cal.App.3d at p. 934; *Thompson* v. *Superior Court* (1977) 70 Cal.App.3d 101, 108 [138 Cal.Rptr. 603].)

 Moreover, the rule is well established that various deficiencies in a warrant do not invalidate the entire warrant. In *Aday* v. *Superior Court* (1961) 55 Cal.2d 789, 797 [13 Cal.Rptr. 415, 362 P.2d 47], after ruling that the search warrant therein was invalid in one respect, our Supreme Court held that "[a]lthough the warrant was defective in the respects noted, it does not follow that it was invalid as a whole. Such a conclusion would mean that the seizure of certain articles, even though proper if viewed separately, must be condemned merely because the warrant was defective with respect to other articles." (See also *People* v. *Atkins* (1982) 128 Cal.App.3d 564, 570 [180 Cal.Rptr. 440]; *People* v. *Howard* (1976) 55 Cal.App.3d 373, 379 [127 Cal.Rptr. 557]; accord *State* v. *Kealoha* (1980) 62 Hawaii 166 [613 P.2d 645, 649-651].) Under *Aday,* invalid portions of a warrant are severable from the valid portions. However, the *Aday* court noted that severability may present the danger that warrants may be obtained which are essentially general in nature even though the particularity requirement is met as to minor items. In the event wholesale seizures are made under such warrants, in the expectation that the seizure would be upheld as to the property specified, severability will not be allowed. (*Aday* v. *Superior Court, supra,* 55 Cal.2d at p. 797.)

 In the case at bench, the search warrant authorized the search of the garden, the wood-framed building and the mobilehome for, inter alia, "[a]rticles of personal property tending to establish the identity of person or persons in control of marijuana and cultivated areas, vehicles, structures, storage areas, residences, or containers where marijuana may be found." Given the circumstances of this case, a more specific description does not seem possible. Unlike a warrant authorizing the search and seizure of stolen property by stating "all other merchandise owned by" the victim, a more particular description of the items reflecting the cultivator's identity in the

instant case could not be made. (Cf. *People* v. *Tockgo, supra,* 145 Cal.App.3d at pp. 640-641.)

The limiting phrase in the warrant, "in control of marijuana and culti-vated areas, vehicles, structures, storage areas, residences, or containers where marijuana may be found," appears to be a "meaningful restriction" upon the items to be seized. The officers did not have complete authority to seize all records and documents, but only those which relate to the identity of the individuals in control of the marijuana cultivation and related areas and structures. Further, that the language did provide a "meaningful re-striction" on the extent of their search, is demonstrated by the fact that the nonmarijuana related items seized were all closely related to the identity of a cultivator.

The judgment is affirmed.

Scott, Acting P. J., and Barry-Deal, J., concurred.