**UNITED STATES of America, Plaintiff,**

v.

**Jeffrey Allen DeBACKER, Defendant.**

**No. M80–2 CR.**

United States District Court, W. D. Michigan, N. D.

July 31, 1980.

James S. Brady, U. S. Atty., Grand Rapids, Mich., for plaintiff.

Frank A. Stupak, Jr., Escanaba, Mich., for defendant.

OPINION

DOUGLAS W. HILLMAN, District Judge.

Defendant, Jeffrey Allen DeBacker, has been charged in a two-count indictment with violations of the federal narcotics laws. In Count I of the indictment, defendant is charged with willfully and knowingly combining, conspiring, confederating and agreeing to manufacture, possess with intent to distribute, and to distribute marijuana, hashish and hashish oil, all Schedule I, non-narcotic controlled substances, in violation of 21 U.S.C. § 841(a)(1). It is alleged

that between 1976 and 1979, plaintiff raised large amounts of marijuana on his farm in Marquette County, Michigan. It is further alleged that between January 1, 1977, and August 24, 1979, plaintiff met and conspired with three other defendants, as well as with unnamed, unindicted co-conspirators, to manufacture and distribute the controlled substances.

In Count II, defendant is charged with violating 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B) in that he knowingly and intentionally manufactured and possessed with intent to distribute 11,954 pounds of marijuana.

Defendant moves to suppress evidence seized from his farm by search warrants obtained on August 22, 1979, and August 23, 1979, because defendant's privacy allegedly was violated when the investigating officers verified an informer's tip that marijuana was growing on the DeBacker farm by flying over the farm 50 feet above the ground. A hearing was held and testimony was taken on July 22, 1980, concerning the aerial surveillance. For reasons that follow, I deny defendant's motion to suppress.

## I. FACTS

Sometime in late 1978, Detective Donald Anderson, of the Michigan State Police, received an anonymous telephone tip that defendant was growing marijuana on his farm located in the counties of Menominee and Delta in the Upper Peninsula of the State of Michigan. Acting upon this tip, Detective Anderson, along with a police pilot, thereafter flew over the farm. Because the farm recently had been harvested, the officer was unable to confirm the tip.

Detective Anderson and three others again flew over the property on August 22, 1979, apparently in order to reinvestigate the earlier tip. Three fields of marijuana were spotted, and as a result, police that day were able to obtain a search warrant. Defendant now seeks to suppress contraband seized that day pursuant to the warrant, contending that his right of privacy was violated by the aerial surveillance.

Defendant's farm is located in a sparsely-populated area of Michigan, or as one witness put it, in the "boondocks". The only road to the farm ends at the curtilage, and most of the property is inaccessible except on foot. The edge of a forest borders much of the property, walling off parts of the field where defendant's marijuana crop allegedly was located. The marijuana crop was surrounded on other sides by barley, alfalfa, or corn, designed to keep it hidden from view. All of the fields were some distance from the homestead. Defendant also had posted around the farm, at regular intervals, signs forbidding trespassing, as well as a fence.

The state police's aerial pass was first made at a height of 200 feet. Although Detective Anderson was sure that he had spotted marijuana plants growing in defendant's fields, the plane made a second pass at 50 feet in order to take a closer look. The plane flew no closer than 200 feet to any person working on the farm, although defendant contended, by way of contradicted evidence, that the plane flew within 40 feet of one of the farmhands. Government testimony established that the plane's flight did not violate any law by flying this low to the ground.

Defendant contends that the aerial surveillance was a search of his property violating the Fourth Amendment of the United States Constitution in that no search warrant had been obtained. The Government opposes this motion, arguing instead that the flight occurred over "open fields", so that no Fourth Amendment rights attached. For the reasons that follow, I conclude that "open fields" may, in certain cases, be protected by the Fourth Amendment. However, I hold that this is not one of those cases, and that defendant's motion consequently must be denied.

## II. MOTION TO SUPPRESS

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." The issue

at hand in the present case is whether Detective Anderson's aerial surveillance of defendant's farmland violated defendant's rights under the Fourth Amendment, and whether, therefore, marijuana grown by defendant ought to be suppressed at trial because the seizure of that contraband grew out of an allegedly unlawful "search". This appears to be a case of first impression in the federal system, although several state courts recently discussed the problem. *See, State v. Stachler*, 570 P.2d 1323 (Haw. S.Ct.1977); *People v. Lashmett*, 71 Ill. App.3d 429, 27 Ill.Dec. 657, 389 N.E.2d 888 (1979); *People v. Superior Court*, 37 Cal. App.3d 836, 112 Cal.Rptr. 764 (1974); *Dean v. Superior Court*, 35 Cal.App.3d 112, 110 Cal.Rptr. 585 (1973).

Defendant contends that he had a reasonable expectation of privacy relating to the marijuana growing on his farm because of the lengths to which he went in order to insure privacy. The Government, on the other hand, contends that the aerial observations made by the state police were made above "open fields", to which the protection of the Fourth Amendment does not extend. *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924).

Although the Supreme Court, in *Hester v. United States, supra*, at 58–59, 44 S.Ct. at 446, stated that, ". . . the special protection accorded the Fourth Amendment to the people in their 'persons, houses, papers, and effects' is not extended to the open fields," this holding arguably is modified by the later ruling in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). There, a defendant who had been charged with transmitting wagering information by telephone was convicted pursuant to testimony by FBI agents who overheard defendant's telephone conversations due to a listening device attached to the outside of a telephone booth. Defendant had objected that this evidence was obtained in violation of his Fourth Amendment rights, but his objection was rebuffed by the trial court.

The Supreme Court reversed defendant's conviction holding that the telephone con-

versation "seized" by the police should have been suppressed. Justice Stewart, writing for the Court, stated, at 351–352, 88 S.Ct. at 511:

> "(T)he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection . . . But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."

The *Katz* opinion generally has been understood to hold that official intrusion into matters or activities to which an individual has a reasonable expectation of privacy, violates the Fourth Amendment, absent a warrant or exigent circumstances. *See, United States ex rel. Gedko v. Heer*, 406 F.Supp. 609 (W.D.Wisc.1975), *vac. & dismissed w/o opinion*, 588 F.2d 840 (7th Cir. 1978); 1 LaFave, *Search and Seizure*, § 2.1 (1978). Justice Harlan, in his concurring opinion in *Katz*, set forth the standard applicable to Fourth Amendment analysis when he stated, 389 U.S. at 361, 88 S.Ct. at 516:

> "My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' Thus a man's home is, for most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the 'plain view' of outsiders are not 'protected' because no intention to keep them to himself has been exhibited. On the other hand, conversations in the open would not be protected against being overheard, for the expectation of privacy under the circumstances would be unreasonable."

The Fifth Circuit, in *United States v. Williams*, 581 F.2d 451 (1978), *cert. denied*, 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979), and the Ninth Circuit in *United States v. Basile*, 569 F.2d 1053 (1978), ruled that under *Katz*, "open fields" are outside

of Fourth Amendment protection because no reasonable expectation of privacy exists in such places. I cannot agree. Such a reading of the Fourth Amendment would provide police with a carte blanche to investigate areas outside of a homestead's curtilage. This would lead to anomalous results, such as in *Conrad v. State*, 63 Wis.2d 616, 218 N.W.2d 252 (1974), where the police entered a defendant's fields with a backhoe and dug 14 or 15 holes until they finally unearthed a body. While the majority declared the search in that case to be "outrageous", they nevertheless upheld the refusal to suppress on grounds that "open fields" were excluded from Fourth Amendment inquiries.

■ I am convinced that *Katz* compels a more sensitive reading of the Fourth Amendment. *See*, LaFave, *supra*, at 337. Instead of declaring entire areas as outside of Fourth Amendment protection, I believe *Katz* compels an analysis of the particular type of surveillance, and its effect on the privacy and security of citizens. *See*, Amsterdam, *Perspectives on the Fourth Amendment*, 58 Minn.L.Rev. 349 (1974). As Justice Harland discussed in his dissenting opinion in *United States v. White*, 401 U.S. 745, 786, 91 S.Ct. 1122, 1143, 28 L.Ed.2d 453 (1971), Fourth Amendment analysis requires "assessing the nature of the particular practice and the likely extent of its impact on the individual's sense of security balanced against the utility of the conduct as a technique of law enforcement." The ultimate question, therefore, is not whether the surveillance in this case occurred in "open fields". Instead, the issue is whether "if the particular form of surveillance practiced by the police is permitted to go unregulated by constitutional restraints, the amount of privacy and freedom remaining to citizens would be diminished to a compass inconsistent with the aims of a free and open society." Amsterdam, *supra*, at 403.

I conclude that isolated instances of aerial surveillance over "open fields" do not offend the Constitution. "Open fields" are not areas in which one traditionally can reasonably expect privacy. *United States v. Freie*, 545 F.2d 1217 (9th Cir. 1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1645, 52 L.Ed.2d 356 (1977); *cf.* also, *United States v. Basile, supra*. This is especially true in a case such as this where airplane flights over local farm lands and at low altitudes (200 feet) are not infrequent, though admittedly flights at 50 feet are unusual. Any pilot, commercial or pleasure-craft, might have observed the marijuana and notified the police.

Moreover, on balance, defendant's relatively minor expectations of privacy do not outweigh the value to society in permitting such non-intrusive surveillance. The police were in a place they otherwise had a right to be, and defendant's fields were plainly observable from the air. Merely because defendant neatly planted contraband in places not observable from the road doesn't mean that all surveillance of the property thereafter is foreclosed. The Fourth Amendment prohibits unreasonable searches and seizures, not all searches and seizures.

Furthermore, the observation of defendant's fields was isolated, though a previous observation had been made in the prior Fall. The police here did not regularly view defendant's property in the hopes of happening upon a crime. Instead, the police, acting upon an anonymous telephone tip, merely sought to verify it in as non-obtrusive a way as possible. This is not a case where the police activities would require that a citizen, in order to "protect himself against surveillance", retire "to the cellar, cloaking all the windows with thick caulking, turning off the lights and remaining absolutely quiet." Amsterdam, *supra*, at 402.

For this reason, and those set out above, I conclude that, in this case, defendant's expectation of privacy was unreasonable. Therefore, I hold that the aerial surveillance of defendant's property did not violate his rights under the Fourth Amendment. Defendant's motion to suppress consequently is denied.

### III.

In a prior opinion in this case, *United States v. DeBacker*, (No. M80–2 CR, July 21, 1980), this court concluded that state police reports made before Federal involvement were discoverable under Rule 16 of the Federal Rules of Criminal Procedure, and were not covered by the Jencks Act (18 U.S.C. § 3500). At a hearing held on July 22, 1980, the Assistant U.S. Attorney admitted that the investigation of defendant in this case was not a joint venture by the state and federal investigatory authorities, but was initiated by the state alone. Therefore, pursuant to the prior opinion of this court, copies of the state police report now in the hands of the court will be turned over to the defendant within ten (10) days of this opinion, absent appeal by the Government.