673 P.2d 140
STATE of New Mexico,
Plaintiff-Appellee,

v.

Dale BIGLER, Defendant-Appellant.

No. 7081.

Court of Appeals of New Mexico.

Sept. 13, 1983.

Certiorari Quashed Nov. 22, 1983.

Paul Bardacke, Atty. Gen., Barbara F. Green, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Nancy Hollander, Freedman, Boyd & Daniels, P.A., Albuquerque, for defendant-appellant.

OPINION

BIVINS, Judge.

Convicted of one count of possession with intent to distribute marijuana, defendant appeals. The case was tried to the court on stipulated facts. Defendant claims the trial court erred in denying his pre-trial motion to suppress evidence, raising two issues: (1) that a police flight over defendant's premises without a warrant amounted to an unconstitutional search; and (2) that a ground search by officers prior to the issuance of the warrant violated defendant's Fourth Amendment rights. We affirm.

I. Facts

Based on a tip from an informant that defendant was growing marijuana in a field near Portales, the chief of police engaged an airplane and flew over defendant's property at approximately 5:30 p.m. on September 15, 1981. Without the assistance of any technical equipment, the officer observed from the airplane what he thought was marijuana growing among rows of corn and near rows of cotton. Thereafter, the officer approached the area by car at approximately 6:45 p.m. and again observed what he believed was marijuana growing above the corn. He made this observation from a county road located 100 yards from the field. The officer testified that he detected the odor of green marijuana as he drove by.

While the police chief sought a warrant, a team of officers went out to surveil the defendant's field. After receiving word by radio that the magistrate had issued the warrant, several members of the team began investigating the field, but they conducted the main search yielding 5,680

pounds of marijuana plants the following morning.

## II.  Aerial Surveillance

Defendant argues that aerial surveillance of his property by the police violated his Fourth Amendment rights under the United States Constitution and Article II, Section 10 of the New Mexico Constitution. We analyze both federal and New Mexico cases to determine whether defendant may invoke constitutional safeguards.

In 1924 the Supreme Court held that Fourth Amendment protection did not extend to certain geographical areas which it denominated "open fields". *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924). The federal courts applied the open fields doctrine of *Hester* to all property which did not fall within the curtilage until 1967, when the Court recognized that the Fourth Amendment protects "people, not places" and that what an individual "seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967).

In *Katz,* a case involving seizure of oral statements through a listening device attached to a public phone booth, the Supreme Court held, "The Government's activities in electronically listening to and recording the petitioner's words violated the privacy upon which he justifiably relied while using the telephone booth and thus constituted a 'search and seizure' within the meaning of the Fourth Amendment." *Id.* at 353, 88 S.Ct. at 512. Thus, *Katz* requires a two-part analysis: 1) a determination of whether an individual has a justifiable expectation of privacy and 2) an assessment of the particular form and degree of surveillance undertaken by the police. *See* 1 W. LaFave, *Search and Seizure,* § 2.4 (1978). As stated in *United States v. DeBacker,* 493 F.Supp. 1078 (W.D.Mich.1980), quoting from Justice Harlan's dissenting opinion in *United States v. White,* 401 U.S. 745, 786, 91 S.Ct. 1122, 1143, 28 L.Ed.2d 453 (1971), "Fourth Amendment analysis requires 'as-

sessing the nature of the particular practice and the likely extent of its impact on the individual's sense of security balanced against the utility of the conduct as a technique of law enforcement.' "

*State v. Chort,* 91 N.M. 584, 577 P.2d 892 (Ct.App.1978), illustrates the departure which *Katz* requires from the *per se* rationale of *Hester.* In *Chort,* a police officer received information that the defendant might have marijuana growing on his property and thereafter rode a horse onto the property so that he could look into a fenced garden located within the tract. This Court held that the defendant had exhibited a reasonable expectation of privacy by erecting a five-foot fence which prevented observation by anyone on horseback outside of the property. It also determined that the officer's action amounted to "an unreasonable government intrusion." Thus, although the defendant had illegally grown marijuana in an open field, the police officer violated his Fourth Amendment rights by subjecting his private fenced area to overreaching ground surveillance.

In the present case defendant surrounded his marijuana crop with six rows of corn. Although this might provide some evidence of his expectation of privacy at ground level, it does not establish any reasonable expectation in connection with overflights. *See United States v. DeBacker; People v. St. Amour,* 104 Cal.App.3d 886, 163 Cal.Rptr. 187 (1980). The fact that defendant's property lies within two or three miles of a municipal airport and the fact that crop dusters fly in the area at will also support the trial court's finding that he had no reasonable expectation of privacy in his field to the extent of visibility from the air.

Defendant does not challenge as inappropriate the altitude or speed of the plane used by the police to surveil his property. Therefore, we hold that the aerial surveillance of the property did not violate defendant's Fourth Amendment rights.

III.  Warrant Requirement

 Defendant contends that at least one police officer entered his property and began to search the field before a search warrant was obtained.  Although some evidence in the record tends to support defendant's contention, other evidence provides substantial support for the trial court's finding that no search took place until after the magistrate issued the warrant.  The Court of Appeals will not substitute its judgment for that of the trial court in order to resolve conflicts in the evidence. *State v. Utter,* 92 N.M. 83, 582 P.2d 1296 (Ct.App. 1978).

The judgment and sentence are affirmed.

IT IS SO ORDERED.

WOOD and LOPEZ, JJ., concur.