[No. A026048. First Dist., Div. Five. Nov. 20, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
DANTE CARLO CIRAOLO, Defendant and Appellant.

## COUNSEL

Pamela H. Duncan, under appointment by the Court of Appeal, and Philip H. Pennypacker for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eugene W. Kaster and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HANING, J.**—Defendant/appellant Dante Carlo Ciraolo appeals his conviction of cultivation of marijuana (Health & Saf. Code, § 11358) following his plea of guilty, contending the trial court erred in failing to suppress the evidence seized during a search of his residence. The search was conducted pursuant to a warrant obtained on the basis of information gathered in a

warrantless overflight of defendant's residence. For reasons hereafter set forth, we conclude the evidence was inadmissible and reverse.

On September 2, 1982, Santa Clara Police Officer Shutz received an anonymous phone message that marijuana plants were seen growing in the backyard of a Santa Clara home, later identified as defendant's residence. Shutz initially went by the house on foot and conducted a ground level investigation. He was unable to observe anything because of two fences that completely enclosed defendant's backyard: a six-foot outer fence, and an inner fence approximately ten feet high. Officer Shutz undertook an airplane flight that same day with the express purpose of observing and photographing that portion of defendant's residence enclosed by his fence. The plane was flown at an altitude of 1,000 feet. Without visual aids, Shutz observed and photographed a marijuana garden in defendant's backyard. On the basis of the information obtained from the overflight, Shutz procured a search warrant for defendant's home, and upon execution thereof, growing marijuana plants were discovered within the fenced area of the backyard and seized.

Defendant's motion under Penal Code section 1538.5 to suppress the plants was denied. ▮ He contends the aerial surveillance violated his reasonable expectation of privacy, protected by the Fourth Amendment and various provisions of the California Constitution.[1] The People contend the aerial surveillance was reasonable, citing, inter alia, *Oliver* v. *United States* (1984) 466 U.S. 170 [80 L.Ed.2d 214, 104 S.Ct. 1735], *United States* v. *Allen* (9th Cir. 1980) 675 F.2d 1373, cert. den. *Allen* v. *United States* (1981) 454 U.S. 838 [70 L.Ed.2d 112, 102 S.Ct. 133], and *People* v. *Superior Court (Stroud)* (1974) 37 Cal.App.3d 836 [112 Cal.Rptr. 764].

▮ At our request both parties have discussed the applicability of *United States* v. *Leon* (1984) — U.S. — [82 L.Ed.2d 677, 104 S.Ct. 3405]. In *Leon,* the United States Supreme Court responded affirmatively to the issue of "whether the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." (*Id.,* at p. — [82 L.Ed.2d at p. 684, 104 S.Ct. at p. 3409].) "[O]ur evaluation of the costs and benefits of suppressing reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate leads to the conclusion that such evidence should be admissible in the prosecution's case-in-chief." (*Id.,* at p. — [82 L.Ed.2d at p. 692, 104 S.Ct. at p. 3416].) However, we conclude that

---

[1] In light of our decision on Fourth Amendment grounds, we need not reach defendant's remaining contentions.

*Leon* does not permit the use of the evidence seized in the instant case. "The good-faith exception for searches conducted *pursuant to warrants* is not intended to signal our unwillingness strictly to enforce the requirements of the Fourth Amendment . . . ." (*United States* v. *Leon, supra,* — U.S. at p. — [82 L.Ed.2d at p. 699, 104 S.Ct. at p. 3422], italics supplied.)

Defendant correctly notes that our primary focus must be directed to the *warrantless* search conducted during the overflight. *Leon* has no application to warrantless searches, nor does it overrule the "fruit of the poisonous tree" doctrine which first bloomed in *Nardone* v. *United States* (1939) 308 U.S. 338 [84 L.Ed. 307, 60 S.Ct. 266] and ripened in *Wong Sun* v. *United States* (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407]. ■ This doctrine forbids the use of after-acquired evidence which is found to be the direct result of an unlawful search or other unlawful conduct. Such evidence may be used only if it can be established that it was acquired or discovered by independent means " '. . . sufficiently distinguishable to be purged of the primary taint.' [Citation.]" (*Wong Sun* v. *United States, supra,* at p. 488 [9 L.Ed.2d at p. 455, 83 S.Ct. at p. 417]; see also *Taylor* v. *Alabama* (1982) 457 U.S. 687 [73 L.Ed.2d 314, 102 S.Ct. 2664]; *Dunaway* v. *New York* (1979) 442 U.S. 200 [60 L.Ed.2d 824, 99 S.Ct. 2248]; *Brown* v. *Illinois* (1975) 422 U.S. 590 [45 L.Ed.2d 416, 95 S.Ct. 2254].)

Further confirmation that the *Wong Sun* doctrine still controls is found in *Segura* v. *United States* (1984) — U.S. — [82 L.Ed.2d 599, 104 S.Ct. 3380] decided the same date as *Leon. Segura* held that a search of an apartment conducted pursuant to a valid search warrant was not invalidated by a previous illegal entry into the apartment, where the warrant and the information upon which it was based were unrelated to the illegal entry. *Segura* implicitly recognized that evidence seized pursuant to a warrant based on facts obtained from a prior unlawful search would be subject to suppression. "[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure [citation], but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.' [Citation.] It 'extends as well to the indirect as the direct products' of unconstitutional conduct. *Wong Sun* v. *United States* . . . . [¶] ■ Evidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion." (*Segura* v. *United States, supra,* — U.S. at p. — [82 L.Ed.2d at p. 608, 104 S.Ct. at p. 3386].) ■ In short, an unconstitutional search cannot be used as the basis for issuance of a search warrant or the Fourth Amendment would be rendered meaningless.[2] (*Segura* v. *United States, supra,* — U.S. at p. — [82 L.Ed.2d at p. 608,

---

[2]Because *Leon* is limited to searches conducted pursuant to warrant, we need not decide the issue of its possible retroactive application to the instant case.

104 S.Ct. at p. 3386]; *Wong Sun* v. *United States, supra,* at p. 488 [9 L.Ed.2d at p. 455, 83 S.Ct. at p. 417]; *McGinnis* v. *United States* (1st Cir. 1955) 227 F.2d 598, 603-604.)

■ We thus refocus our attention on the aerial surveillance of defendant's residence, from which evidence was obtained to support the issuance of the search warrant. ■ "The question to be resolved when it is claimed that evidence subsequently obtained is 'tainted' or is 'fruit' of a prior illegality is whether the challenged evidence was ' "come at by exploitation of [the initial] illegality or instead by means *sufficiently distinguishable* to be purged of the primary taint." ' " (*Segura* v. *United States, supra,* — U.S. at p. — [82 L.Ed.2d at p. 608, 104 S.Ct. at p. 3386], citing *Wong Sun* v. *United States, supra,* 371 U.S. at p. 488 [9 L.Ed.2d at p. 455, 83 S.Ct. at p. 417].) It is undisputed that the aerial surveillance provided the sole source of factual support for the warrant.[3]

■ We disagree with the People's contention that the federal courts have condoned aerial surveillance of areas within the curtilage. *Oliver* v. *United States* (1984) 466 U.S. 170 [80 L.Ed.2d 214, 104 S.Ct. 1735], upon which the People rely, reaffirmed the "open fields" doctrine of *Hester* v. *United States* (1924) 265 U.S. 57 [68 L.Ed. 898, 44 S.Ct. 445]. *Oliver* held the Fourth Amendment did not preclude the use of evidence obtained through a warrantless search of secluded but open fields on private property, even though posted with "no trespassing" signs and secured with a locked gate. The court reasoned that open fields, although secluded, were not within the curtilage, and hence not within an area where one could reasonably entertain an expectation of privacy. However, the court made it clear that the area within the curtilage—"the land immediately surrounding and associated with the home"[4]—was entitled to the "right to privacy embodied in the Fourth Amendment."[5] "[T]he rule of *Hester* v. *United States, supra,* that we affirm today, may be understood as providing that an individual may not legitimately demand privacy for activities conducted out of doors in fields, *except in the area immediately surrounding the home.* [Citation.] This rule is true to the conception of the right to privacy embodied in the Fourth Amendment. The Amendment reflects the recognition of the Founders that certain enclaves should be free from arbitrary government interference. For

---

[3]Clearly, the anonymous tip received by Officer Shutz did not, by itself, provide probable cause to support a warrant. (*Illinois* v. *Gates* (1983) 462 U.S. 213, 239 [76 L.Ed.2d 527, 548-549, 103 S.Ct. 2317, 2332-2333]; accord *People* v. *Reeves* (1964) 61 Cal.2d 268, 273-274 [38 Cal.Rptr. 1, 391 P.2d 393].)

[4]466 U.S. at page — [80 L.Ed.2d at page 225, 104 S.Ct. at page 1742].

[5]466 U.S. at page — [80 L.Ed.2d at page 224, 104 S.Ct. at page 1741].

example, the Court since the enactment of the Fourth Amendment has stressed 'the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic.' [Citations.]" (*Oliver* v. *United States, supra,* 466 U.S. at p. — [80 L.Ed.2d at p. 224, 104 S.Ct. at p. 1741], italics supplied.)

The *Oliver* court deemed its decision to be "consistent with the understanding of the right of privacy expressed in our Fourth Amendment jurisprudence [in] *Katz* v. *United States* (1967) 389 U.S. 347 . . . . [T]he touchstone of [Fourth] Amendment analysis has been the question whether a person has a 'constitutionally protected reasonable expectation of privacy.'" (*Oliver* v. *United States, supra,* 466 U.S. at p. — [80 L.Ed.2d at p. 223, 104 S.Ct. at p. 1740].)

In *Katz* v. *United States, supra,* 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507], the high court emphasized that the Fourth Amendment protects people, not places, in holding that a person making a call from a public telephone booth was protected from electronic eavesdropping in the absence of a warrant supported by probable cause. The court held that the Fourth Amendment's protections extended to situations wherein an individual had what has come to be described as a reasonable expectation of privacy. (Accord *People* v. *Edwards* (1969) 71 Cal.2d 1096 [80 Cal.Rptr. 633, 458 P.2d 713].) ■ "[W]hat [a person] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." (*Katz* v. *United States, supra,* 389 U.S. at pp. 351-352 [19 L.Ed.2d at p. 582, 88 S.Ct. at p. 511]; accord *Oliver* v. *United States, supra,* 466 U.S. at p. — [80 L.Ed.2d at p. 223, 104 S.Ct. at p. 1740].) *Oliver* contains the statement that "both petitioner Oliver and respondent Thornton concede that the public and police lawfully may survey *lands* from the air." (*Oliver* v. *United States, supra,* 466 U.S. at p. — [80 L.Ed.2d at p. 224, 104 S.Ct. at p. 1741], fn. omitted, italics supplied.) For this proposition *Oliver* footnotes a reference to *United States* v. *Allen* (9th Cir. 1980) 675 F.2d 1373 and *United States* v. *DeBacker* (W.D.Mich. 1980) 493 F.Supp. 1078 [56 A.L.R. Fed. 765]. (*Oliver, supra,* 466 U.S. at p. —, fn. 9 [80 L.Ed.2d at p. 224, 104 S.Ct. at p. 1741].)

*Allen* involved the helicopter surveillance of a 200-acre ranch on the Oregon coast. The ranch paralleled the ocean for approximately one mile and was separated from the beach by a narrow strip of federal land. It was subjected to regular Coast Guard helicopter overflights for law enforcement and other reasons. The Ninth Circuit held that any resident of the ranch, undoubtedly aware of the ranch's proximity to the seacoast, the functions of the Coast Guard and the frequency of its overflights, could not reasonably entertain an expectation of privacy. (*United States* v. *Allen, supra,* 675 F.2d

at p. 1381.) *DeBacker* involved a flight over open fields on the defendant's farm. No issue of surveillance within the curtilage was involved, and the court found that the defendant could not have had a reasonable expectation of privacy.

Other federal cases we have discovered which deal with aerial surveillance also distinguish between open areas or fields and the curtilage. (See, e.g., *United States* v. *Marbury* (5th Cir. 1984) 732 F.2d 390, which upheld a helicopter flight over "the plainly noncurtilage portions" of a "large commercial gravel pit tract . . . ." (At p. 398).) Consequently, *Oliver*'s reference to aerial surveillance does not remove Fourth Amendment protection from the curtilage, wherein the landowner may reasonably expect privacy.

■ Defendant's backyard is within the curtilage; the height and existence of the two fences constitute objective criteria from which we may conclude he manifested a reasonable expectation of privacy by any standard. ■ "The historical underpinnings of the 'open fields' doctrine also demonstrate that the doctrine is consistent with respect for 'reasonable expectations of privacy.' As Justice Holmes, writing for the Court, observed in *Hester,* 265 U.S., at 57, the common law distinguished 'open fields' from the 'curtilage,' the land immediately surrounding and associated with the home. [Citation.] The distinction implies that . . . the curtilage . . . warrants the Fourth Amendment protections that attach to the home. At common law, the curtilage is the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life,' *Boyd* v. *United States,* 116 U.S. 616, 630 (1886), and therefore has been considered part of home itself for Fourth Amendment purposes. Thus, courts have extended Fourth Amendment protection to the curtilage; and they have defined the curtilage, as did the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private. [Citations.]" (*Oliver* v. *United States, supra,* 466 U.S. at p. — [80 L.Ed.2d at p. 225, 104 S.Ct. at p. 1742].)

■ From the perspective of defendant's reasonable expectation of privacy we deem it significant that the aerial surveillance of his backyard was not the result of a routine patrol conducted for any other legitimate law enforcement or public safety objective, but was undertaken for the specific purpose of observing this particular enclosure within defendant's curtilage.

■ ■ ■ ■ In short, we are not dealing with the observation of an open corn field which also contains a cannabis crop. We are confronted instead with a direct and unauthorized intrusion into the sanctity of the

home.[6] ▮▮▮ "[A] person need not construct an opaque bubble over his or her land in order to have a reasonable expectation of privacy regarding the activities occurring there in all circumstances." (*United States* v. *Allen, supra,* 675 F.2d at p. 1380.)

▮▮▮ Having determined that the area searched was within defendant's curtilage wherein he could reasonably entertain an expectation of privacy, we must conclude that the warrantless overflight constituted an unreasonable search in violation of the Fourth Amendment. The fruits of that unconstitutional search cannot support a warrant.

The judgment is reversed.

Low, P. J., and King, J., concurred.

A petition for a rehearing was denied December 10, 1984, and respondent's petition for a hearing by the Supreme Court was denied January 23, 1985. Lucas, J., was of the opinion that the petition should be granted.

---

[6]"[I]t becomes clear that the reach of [the Fourth] Amendment cannot turn upon the presence or absence of a physical intrusion into any given enclosure." (*Katz* v. *United States, supra,* 389 U.S. at p. 353 [19 L.Ed.2d at p. 583, 88 S.Ct. at p. 512].)