William Haskell **BLALOCK,**
Defendant-Appellant,

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 1–1184A276.**

Court of Appeals of Indiana,
First District.

April 18, 1985.

Rehearing Denied May 29, 1985.

Michael A. Douglass, Brookville, for defendant-appellant.

Linley E. Pearson Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Presiding Judge.

### STATEMENT OF THE CASE

Appellant, William Haskell Blalock (Blalock), appeals from his conviction, in the Franklin Circuit Court, of Dealing in Marijuana, a class C felony, in violation of Indiana Code section 35–48–4–10(b)(2), and from the executed sentence and fine subsequently imposed.[1] We reverse.

### FACTS

In November 1982, Blalock purchased 77 acres of heavily wooded land in a relatively isolated portion of Franklin county. There were two structures on this property. Near the entrance to the property there was a mobile home which Blalock apparently used as a residence. In addition, Blalock had erected a large pole barn in a remote section of his property. This structure had steel siding and a steel roof. It had only one window—a long narrow slit-like window in one of the barn's doors. Annexed to one side of the barn, and stretching the entire length of the barn, was a greenhouse. Three of its walls were covered with translucent corrugated plastic paneling. Its roof, which appears to be joined to the pole barn's roof along its entire length, was covered with the same translucent paneling. The fourth wall of the greenhouse was formed by the adjoining wall of the pole barn. A chain link fence enclosed three sides of this structure, permitting access only to the pole barn's windowed door and its large sliding door. Blalock had also constructed a large partition, inside his fence, which shielded the greenhouse portion of the structure from the view of anyone approaching on the only available access road.

Sometime during summer 1983, the Indiana State Police (ISP) received a tip concerning Blalock's barn. The informant reported only that the building had been constructed and that he had been told not to reveal its existence to anyone. Acting on this information, two ISP officers drove to Blalock's land. They could not enter the property, however, because a large padlocked gate had been placed across its entrance. From this vantage point, the officers could see only what appeared to be a metal building largely obstructed by trees.[2] Consequently, the officers decided to conduct aerial surveillance of Blalock's property in order to determine for what it was being used.

On August 19, 1983, ISP officers conducted their first overflight of Blalock's property. Using a single engine fixed-wing aircraft at an altitude of between 850 feet and 1000 feet, the officers took a series of

---

1. Indiana Code section 35–48–4–10 (Burns Supp. 1984) states in pertinent part:

 "(a) A person who:
 (1) Knowingly or intentionally [manufactures] or delivers marijuana, hash oil, or hashish, pure or adulterated; or
 (2) Possesses, with intent to manufacture or deliver, marijuana, hash oil, or hashish, pure or adulterated;
 commits dealing in marijuana, hash oil, or hashish, a class A misdemeanor.

 (b) However, the offense specified in subsection (a) is:

 . . . . .

 (2) A class C felony if the amount involved is ten [10] pounds or more of marijuana or three hundred [300] or more grams of hash oil or hashish."

2. The officers discovered later that this was not the building their informant told them about but was, instead, Blalock's mobile home.

photographs of Blalock's property, mobile home, and pole barn. Through the translucent roof of the greenhouse portion of the pole barn structure, the officers were able to observe dark green plants of varying heights arranged in rows. They could not discern either the number or shape of the leaves on these plants. Based on the security precautions visible from the air, the remoteness of the area, and the color of the plant-like material visible under the translucent roof, these officers concluded that marijuana was being grown inside Blalock's greenhouse. On August 21, 1983, the same pilot who flew the first overflight and another ISP officer, conducted a second overflight. The procedure employed during this flight was similar to that used in the first overflight. Once again, through the translucent roof of the greenhouse, the officers could observe only that a dark green plant-like material was present. They also concluded, however, that marijuana was being grown in Blalock's greenhouse.

On August 23, 1983, the ISP officer involved in the first overflight signed an Affidavit for Search Warrant prepared by the Franklin County Prosecuting Attorney. Based upon this affidavit, a search warrant was issued for Blalock's pole barn and greenhouse. Officers executing the search warrant discovered a sophisticated greenhouse operation and a large number of marijuana plants in various stages of maturity. Blalock subsequently was charged by information with Dealing in Marijuana in violation of Indiana Code section 35–48–4–10(b)(2) (Burns Supp.1984), a class C felony.[3]

Prior to trial, Blalock filed a motion to suppress the evidence seized during the search of his pole barn and greenhouse. He alleged four grounds in his motion to suppress: (1) the affidavit failed to establish probable cause, (2) the warrantless overflights were in violation of the fourth amendment, (3) the affidavit included deceptive language, and (4) too much time elapsed between the overflights and the execution of the search warrant. The trial court denied his motion and Blalock was subsequently convicted of Dealing in Marijuana as a class C felony. He received a five year executed sentence and was fined $500. On appeal, Blalock raises the same issues he raised in his motion to suppress.

### ISSUES

Due to our resolution of this appeal, we address only two of appellant Blalock's issues. They are:

1. Whether the warrantless aerial surveillance of Blalock's greenhouse violated the fourth amendment.

2. Whether the affidavit, standing alone, established probable cause sufficient to justify issuance of a search warrant.

### DISCUSSION AND DECISION

*Issue One*

■ The threshold inquiry in any fourth amendment analysis must be, "has a search occurred?" If no search has occurred, it is irrelevant that the governmental conduct challenged by the defendant is unreasonable. It is only after finding that a certain governmental intrusion constitutes a search that the fourth amendment safeguards are available. Thus, we turn first to that threshold inquiry.

■ Since *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, a two-prong test has been employed in order to determine whether or not a search, entitled to fourth amendment protections, has occurred.[4] First, the individual claim-

---

**3.** Blalock's co-defendant, David Miles Ittel, was also charged with Dealing in Marijuana as a class C felony. He pleaded guilty prior to trial, however, and is not a party to this appeal.

**4.** In *Katz,* the majority opinion defined a fourth amendment search in terms of a violation of privacy upon which the claimant had justifiably relied. *Katz,* 389 U.S. at 353, 88 S.Ct. at 512, 19 L.Ed.2d at 583. The two prong analysis employed here is actually derived from Justice Harlan's concurring opinion in *Katz. Id.,* 389 U.S. at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 587. It is this two-prong analysis, however, which has developed as the *Katz* test. *See Smith v. Maryland* (1979), 442 U.S. 735, 740, 99 S.Ct. 2577,

ing the fourth amendment violation must establish that he or she had an actual or subjective expectation of privacy. Second, that claimed expectation must be one which society is prepared to recognize as reasonable. Both prongs must be met before the fourth amendment protections will be applicable. We turn next, therefore, to a discussion of each of these prongs.

■ The first prong of the *Katz* analysis actually entails two elements. *Dow Chemical Co. v. United States* (6th Cir.1984), 749 F.2d 307, 312, *petition for cert. filed,* 53 U.S.L.W. 3600, (February 7, 1985) (No. 84–1259). The individual claiming the fourth amendment violation must show an actual or subjective expectation of privacy *in a particular place.* He or she must also establish an actual or subjective expectation of privacy *from a particular type of governmental intrusion.* *Dow Chemical,* at 312; *see also Katz,* 389 U.S. at 352, 88 S.Ct. at 511, 19 L.Ed.2d at 582; Berner, *Search and Seizure: Status and Methodology,* 8 Val.U.L.Rev. 471, 480 (1974). In determining whether Blalock had an actual or subjective expectation of privacy in his greenhouse from aerial surveillance by police we will look to his "objective manifestations of any claimed privacy right." *Dow Chemical,* at 312; *United States v. Taborda* (2d Cir.1980), 635 F.2d 131, 137.

■ Blalock took several precautions to shield the contents of his greenhouse from aerial surveillance.[5] He constructed his greenhouse in a relatively remote, heavily wooded area. The surrounding forest effectively shielded the greenhouse from all but the most direct overflights. Blalock also used translucent plastic paneling to cover the roof of his greenhouse. Thus, while the translucent roofing admitted sunlight to the greenhouse it prevented direct observation of the structure's contents. As the Sixth Circuit observed in Dow Chemical, "[a] comparison of the precautions a person does take with the precautions he might take, when such precautions are feasible and not unreasonably expensive, is a factor to be considered in determining his privacy expectation *from the kind of intruder* about whom he is complaining." (Emphasis in original.) *Dow Chemical,* at 313. In this case, however, the only additional precaution which Blalock might have employed would have been to use an opaque roof. Of course, that would have precluded the use of the structure for the purpose for which it was obviously intended: as a greenhouse. The fourth amendment does not require individuals to conduct their daily affairs in a light-proof container. *United States v. Allen* (9th Cir.1980), 633 F.2d 1282, 1289, *cert. denied,* 454 U.S. 833, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981). Blalock's objective behavior demonstrates an expectation of privacy from aerial surveillance of the contents of his greenhouse. Thus, we turn next to the second step in the *Katz* analysis.

■ The second prong of the *Katz* analysis requires a determination of the reasonableness of Blalock's expectation. *Katz,* 389 U.S. at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 588 (Harlan, J., concurring). This is largely a function of location. *Taborda,* at 137. *See e.g., Oliver v. United States* (1984), —— U.S. ——, ——, 104 S.Ct. 1735, 1741, 80 L.Ed.2d 214, 224; *Katz,* 389 U.S. at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 588 (Harlan, J., concurring); *Dow Chemical,* at 313. Consequently, it is reasonable to expect privacy inside a home, office, or motel room. It is not, however, reasonable to

2580, 61 L.Ed.2d 220, 226; *Fyock v. State* (1982), Ind., 436 N.E.2d 1089, 1095.

**5.** Blalock also took great care to prevent observation of his greenhouse from ground level. Courts have generally held, however, that attempts to preclude ground level observations do not demonstrate an actual or subjective expectation to be free from aerial surveillance. NOTE, *Aerial Surveillance: A Plane View of the Fourth Amendment,* 18 Gonz.L.Rev. 307, 324 (1982); NOTE, *Aerial Surveillance: Overlooking the Fourth Amendment,* 50 Fordham L.Rev. 271, 282–83 (1981); *see e.g., Dow Chemical,* at 312. This case does not require us to determine whether such is the rule in Indiana. However, we will focus our discussion only on those precautions which Blalock took to be free from aerial surveillance.

expect privacy in an "open field", *Oliver*, —— U.S. at ——, 104 S.Ct. at 1741, 80 L.Ed.2d at 224, or in the outdoor portions of an industrial complex located in an urban area near an airport, *Dow Chemical*, at 313.[6] Unlike *Oliver* or *Dow Chemical*, Blalock's expectation of privacy arose in a building located in a secluded rural area in Franklin county. There is no indication in the record before us that commercial or private aircraft routinely flew over the greenhouse at altitudes sufficiently low enough to allow examination of its contents. Consequently, we find Blalock's expectation of privacy to be one which society must recognize as reasonable.

■ We conclude that aerial surveillance violated Blalock's fourth amendment rights.[7] It could not, therefore, form the basis for the subsequent issuance of the search warrant. *Wong Sun v. United States* (1963), 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455; *see also Segura v. United States* (1984), —— U.S. ——, 104 S.Ct. 3380, 82 L.Ed.2d 599 (implicitly upholding *Wong Sun's* "fruit of the poisonous tree" doctrine). Consequently, the evidence gathered pursuant to the execution of that search warrant should have been suppressed. *Mapp v. Ohio* (1961), 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090; *Ashley v. State* (1968), 251 Ind. 359, 364, 241 N.E.2d 264, 268; *Callender v.*

*State* (1922), 193 Ind. 91, 96, 138 N.E. 817, 818.[8]

*Issue Two*

■ Even if the aerial surveillance did not constitute a fourth amendment search, the evidence seized from Blalock's greenhouse still should have been excluded at trial. A valid search warrant may issue only upon a showing of probable cause. U.S. Const. amend. IV; Ind. Const. art. I, § 11; Indiana Code section 35–33–5–1 (Burns Supp.1984). The Affidavit for Search Warrant, upon which the search warrant for the greenhouse was issued, stated in relevant part:

"The reason and grounds for this Affiant's belief that there is probable cause for searching and seizing marijuana in the above described building is as follows: On August 19, 1983, at approximately 10:58 o'clock A.M., this Affiant was flying over the above described building and observed through the clear roof of said building, numerous dark green plants in varying heights, all of the same dark green color which this officer believes to be marijuana that is being manufactured and cultivated in said building. This building can only be seen by means of airplane because of its location on a hill in a wooded area and

---

**6.** The Sixth Circuit stated, in fact, that Dow Chemical's plant was "... within the pattern of planes landing and taking off...." *Dow Chemical*, at 313.

**7.** A warrantless search is *per se* unreasonable unless the state can establish that its conduct was justified by one of the exceptions to the warrant requirement. *Fisher v. State* (1984), Ind., 468 N.E.2d 1365, 1368. The state has made no such showing here.

**8.** The position we adopt, invalidating the aerial surveillance undertaken in this case, finds support in recent cases of the California appellate courts. *See e.g., People v. Ciraolo* (1984), 161 Cal.App.3d 1081, 208 Cal.Rptr. 93 (holding warrantless overflight of defendant's curtilage in violation of fourth amendment); *People v. Cook* (1984), 151 Cal.App.3d 1121, 199 Cal.Rptr. 204 (finding violation of fourth amendment where police had to resort to aerial surveillance to observe contents of defendant's fenced-in backyard). Other jurisdictions, confronted with sim-

ilar fact situations, have found no fourth amendment violation. *See e.g., Randall v. State* (1984), Fla.Dist.Ct.App., 458 So.2d 822 (upholding aerial surveillance of defendant's fenced backyard based on Florida Supreme Court ruling permitting police officer, located outside constitutionally protected area, to look into the protected area to observe contraband.); *State v. Knight* (1980), 63 Hawaii 90, 621 P.2d 370 (upholding aerial surveillance of exterior portions of defendant's greenhouse as permissible "open view"); *State v. Rogers* (1983), 100 N.M. 517, 673 P.2d 142 (finding no reasonable expectation of privacy in marijuana plants protruding from holes in greenhouse roof and plainly visible during aerial surveillance of curtilage of defendant's home). Some of these cases tend, however, to focus on the reasonableness of the police conduct challenged. As we indicated above, such analysis is improper under the *Katz* two-step approach.

because of a locked gate at the end of Frazer Road. This Affiant is familiar with marijuana and has seen it in all of the stages of manufacturing and cultivation. This Affiant contacted Trooper Steve Todd of the Indiana State Police, whom the Affiant knows in his professional capacity to be honest and reliable and Trooper Todd also flew over the above described building on August 21, 1983, and also identified the dark green plants located in said building as being marijuana."

Record at 13–14. This affidavit is, we feel, insufficient to establish probable cause.

 When reviewing an Affidavit for Search Warrant on appeal, "we must determine whether, apart from the conclusions of the affiant or informant, it sufficiently apprised the magistrate of the underlying facts and circumstances tending to show probable cause. [Citations omitted.]" *Ruth v. State* (1984), Ind.App., 462 N.E.2d 269, 272, *trans. denied.* Here the only facts and circumstances relevant to the determination of probable cause are that the plants were dark green in color and of varying heights. From these facts alone, the affiant, who is familiar with marijuana and has seen it in all stages of cultivation, concluded that Blalock's greenhouse contained marijuana. These facts and circumstances are not sufficient, however, to allow a neutral magistrate to make an independent determination of probable cause. *Id.; Flaherty v. State* (1982), Ind.App., 443 N.E.2d 443 N.E.2d 340, 342–43, *trans. denied.* Consequently, all evidence seized pursuant to the search warrant should have been suppressed. *Ashley,* 251 Ind. at 364, 241 N.E.2d at 268; *Callender,* 193 Ind. at 96, 138 N.E. at 818.

 The dissent urges application of the "good-faith exception" enunciated in *United States v. Leon* (1984), ── U.S. ──, 104 S.Ct. 3405, 82 L.Ed.2d 677, and its companion case, *Massachusetts v. Sheppard* (1984), ── U.S. ──, 104 S.Ct. 3424, 82 L.Ed.2d 737, which would permit admission of evidence seized in reasonable, good-faith reliance on a search warrant that is

subsequently held to be defective. We note initially that this recently discovered exception to the longstanding "exclusionary rule" has no application to warrantless searches. *United States v. Morgan* (6th Cir.1984), 743 F.2d 1158; *Ciralo,* 161 Cal. App.3d at 1086, 208 Cal.Rptr. at 95. Furthermore, *Leon* and *Sheppard* do not overrule *Wong Sun's* "fruit of the poisonous tree" doctrine. *See Segura v. United States* (1984), ── U.S. ──, 104 S.Ct. 3380, 82 L.Ed.2d 599 (decided on same day as *Leon* and *Sheppard.)* As we indicated in our discussion of *Issue One,* the evidence gathered during the two warrantless overflights of Blalock's greenhouse could not form the basis for a valid search warrant. *Leon* and *Sheppard* have no effect on that result. Any evidence seized pursuant to a warrant, which is itself based on illegally gathered evidence, remains subject to suppression. *Ciralo,* 161 Cal.App.3d at 1086, 208 Cal.Rptr. at 95.

 Even if the aerial surveillance conducted in this case did not violate Blalock's fourth amendment rights, *Leon* and *Sheppard* would not permit the introduction of the evidence seized pursuant to the subsequently issued warrant. As Justice White indicated in *Leon,* the "good-faith exception" is not without its own exceptions. Suppression remains the appropriate remedy where: (1) the judge or magistrate issuing the warrant is misled by information contained in the affidavit which the affiant knew or should have known was false, (2) the issuing magistrate completely abandons his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York* (1979), 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920, (3) the affidavit is so lacking in indicia of probable cause that no reasonably well trained officer could believe in its existence, and (4) the warrant fails to identify with particularity the place to be searched or the items to be seized. *Leon,* ── U.S. at ──, 104 S.Ct. at 3421–22, 82 L.Ed.2d at 699.

 Although neither party addressed the "good-faith exception" in their briefs, it would seem clear that the third exception

to that principal is applicable to the case now before us. As we suggested in our discussion of *Issue Two*, once the affiant's unsupported conclusions are removed, the affidavit is clearly insufficient to establish probable cause. Unlike *Leon*, this is not a close case. No well trained law enforcement official could have reasonably believed that the affidavit challenged here established probable cause. Consequently, we must conclude that suppression was the appropriate remedy. To hold otherwise would render the fourth amendment and our statutes governing the issuance of search warrants meaningless. It would, in fact, permit exactly the type of governmental intrusion challenged here; nosey police officers invading private property purely out of curiosity.

Judgment reversed and cause remanded for a new trial.

ROBERTSON, J., concurs.

NEAL, J., dissents with separate opinion.

NEAL, Judge, dissenting.

I respectfully dissent for the following reasons. Although it is not difficult to arrive at the conclusions of probable cause reached by the judge issuing the warrant based upon evidence of a clandestine, barricaded greenhouse operation growing leafy plants in a remote and nearly inaccessible area, I do not rest my dissent thereon, but upon the applicability of the exclusionary rule, which is not dealt with by the majority. The rules surrounding search and seizure and arrest, and the admissibility or exclusion of evidence obtained thereby, generated over the years by various courts of appellate jurisdiction have become so intricate, so tedious and so incomprehensible that no learned judge or lawyer can make an extemporaneous recital of them. Moreover, the courts and judges cannot even agree among themselves as to the correctness of the rules; decisions are made by deeply divided courts after months of study, reflection, and scrutiny of mountainous research collected by platoons of clerks. Yet, only cursorily trained police

officers are expected by us to instantly effect total recall of these rules, analyze them, and apply them while pursuing a fleeing felon down an alley in the middle of the night. Such expectations have met with justifiable criticism in the attacks made on the exclusionary rule. Since state court rules have been fabricated in light of and parallel the decisions of the United States Supreme Court, two recent decisions of that court must be examined, *United States v. Leon*, (1984) —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 and *Massachusetts v. Sheppard*, (1984) —— U.S. ——, 104 S.Ct. 3424, 82 L.Ed.2d 737.

In *Leon*, the court squarely found the issue to be the applicability of the exclusionary rule, and stated the issue as follows:

"Whether the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause."

The court answered the issue in the affirmative.

Justice White, writing the majority opinion, began his analysis by reiterating that the exclusionary rule acts as a "judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the person aggrieved". *Id.* 104 S.Ct. at 3412, citing *United States v. Calandra*, (1974) 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561. The majority then reminded us that the "substantial social costs", such as disrespect for the law, exacted by the exclusionary rule for vindication of Fourth Amendment rights have long been a matter of concern. *Id.*

Section II(B) of the opinion is a review of recent Supreme Court decisions which have whittled down the scope of the exclusionary rule. *See generally, Stone v. Powell*, (1976) 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (a state prisoner who has

been afforded a full and fair opportunity to litigate a Fourth Amendment claim may not obtain federal habeas relief on the ground that unlawfully obtained evidence had been introduced at his trial); *United States v. Calandra, supra,* (court declined to allow grand jury witnesses to refuse to answer questions based on evidence from an unlawful search or seizure); *Rakas v. Illinois,* (1978) 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (standing to invoke exclusionary rule limited to victim of police misconduct); *Oregon v. Hass,* (1975) 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (evidence obtained in violation of Fourth Amendment may be used to impeach defendant's direct testimony). The majority acknowledged that, as of yet, it has not recognized a good faith exception to the exclusionary rule; however, it suggested that the balancing approach used in the above decisions is equally useful in the most recent modifications. *Id.* 104 S.Ct. at 3416.

In Part III, Justice White examined the deterrent effect of the exclusionary rule. He stated "[t]o the extent that proponents of exclusion rely on its behavioral effects on judges and magistrates in these areas, their reliance is misplaced". *Id.* At any rate, the majority concluded, the purpose of the exclusionary rule is to punish police conduct, not punish the errors of judges and magistrates.

Having determined that the deterrent effect of the exclusionary rule applies to police misconduct, Justice White then moved to the deduction that the rule "cannot be expected, and should not be applied, to deter *reasonable* law enforcement activity". *Id.* 104 S.Ct. at 3419 (emphasis added). Quoting from *Stone v. Powell, supra,* he concluded:

"In short, where the officer's conduct is objectively reasonable,

'excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that ... the officer is acting as a reasonable officer would and should act under the circumstances. Excluding the evidence can in no way

affect his future conduct unless it is to make him less willing to do his duty.' *Stone v. Powell,* 428 U.S., at 539–540 [96 S.Ct. at 3073–3074]."

Cited in *Leon, supra,* 104 S.Ct. at 3420. The above logic is particularly true, noted the majority, when a police officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. *Id.* It is up to the magistrate to determine whether the warrant is technically sufficient; the police officer should not be penalized for the magistrate's mistake.

The conclusion of the majority opinion is the court's response to the dissent's "parading of the horribles": "the good faith exception for searches conducted pursuant to warrants is not intended to signal our unwillingness strictly to enforce the requirements of the Fourth Amendment, and we do not believe it will have this effect". *Id.* 104 S.Ct. at 3422.

In *Massachusetts v. Sheppard,* the Supreme Court applied the rules articulated in *Leon* to a situation in which police officers seized items pursuant to a warrant subsequently invalidated because of a technical error on the part of the issuing judge. *Sheppard, supra,* 104 S.Ct. at 3428.

Here, there is no allegation that the officers misrepresented the facts to the magistrate or any other allegation of bad faith. Good faith was demonstrated by applying for a search warrant. When the matter is presented to the court for a presearch determination of legitimacy, the purpose of the Fourth Amendment is satisfied; that is, to prevent nosy police officers from invading private property out of curiosity. *Leon* and *Sheppard* are applicable here.

For these reasons, the cause should be affirmed.